**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| ARROWPAC INCORPORATED, et al.,<br><br>                    Plaintiffs,<br><br>         v.<br><br>SEA STAR LINE, LLC, et al.,<br><br>                    Defendants. | Case No. 3:12-cv-1180-J-32JBT |
| MONDELEZ INTERNATIONAL, INC., et al.,<br><br>                    Plaintiffs,<br><br>         v.<br><br>SEA STAR LINE, LLC, et al.,<br><br>                    Defendants. | Case No. 3:12-cv-1181-J-32JBT |
| WALGREEN CO., et al.,<br>                    Plaintiffs,<br><br>         v.<br><br>SEA STAR LINE, LLC, et al.,<br><br>                    Defendants. | Case No. 3:12-cv-1182-J-32JRK |
| HOME DEPOT U.S.A, Inc., et al.,<br><br>                    Plaintiffs,<br><br>         v.<br><br>SEA STAR LINE, LLC, et al.,<br><br>                    Defendants. | Case No. 3:12-cv-1183-J-32MCR |

**MOTION TO DISQUALIFY BAKER & HOSTETLER, LLP AS COUNSEL**
**FOR SEA STAR LINE, LLC AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

**Page**

I.      OVERVIEW ....................................................................................................1

II.     BAKER CONFLICT CHRONOLOGY ........................................................5

    A.    DOJ and FBI Raid Sea Star and Other Carriers......................................5

    B.    Sea Star Has Consistently Sought the Consolidation for Pretrial
          Management of All Cases Against It ........................................................5

    C.    Sea Star Pleaded Guilty and the Opt-Out Plaintiffs Filed Suit ...............7

    D.    Sea Star Again Urged Consolidation of Plaintiffs' Identical Cases .......7

    E.    Baker's First Appearance for Sea Star On the Record ............................8

    F.    Baker Finally Sought Waivers—But Nestlé and YRCW Declined...........9

        1.    Nestlé Declined to Waive Baker's Admitted Conflict................9

        2.    YRCW Declined to Waive Baker's Admitted Conflict............10

    G.    Baker Pro Hac Vice Applications Were Filed in South Carolina then
          Withdrawn..............................................................................................11

    H.    Sea Star Proposed "Conflicts Counsel" to Resolve Baker's Admitted
          Conflicts ................................................................................................11

    I.    Plaintiffs Re-File Their Cases in the Middle District of Florida ...........12

    J.    Baker Seeks to Represent Sea Star in this District ................................13

III.    ARGUMENT .................................................................................................13

    A.    Baker's Representation of Sea Star in the Cabotage Litigation is Directly
          Adverse to the Claims of Nestlé and YRCW..........................................15

    B.    Baker's Conduct is Unethical Per Se and Requires Its Disqualification ..............16

    C.    Sea Star's Reliance on Sumitomo is Misplaced ....................................17

        1.    Sumitomo Applied a Far Different Standard than Applies Here..............17

        2.    Unlike Paul Weiss, Baker Failed to Withdraw .........................18

        3.    No Prejudice to Sea Star When Baker Disqualified .................20

IV.     CONCLUSION...............................................................................................21

# EXHIBIT LIST

**A**     10/26/2012   Letter to David C. Eddy from Sea Star counsel John A. Massalon with attachments

**B**     09/10/2012   Defendant Sea Star Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)

**C**     09/10/2012   Defendant Sea Star Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(A) or, in the Alternative, to Transfer Venue to the M.D. FLA Pursuant to 28 U.S.C. § 1404(A)

**D**     06/20/2008  Defendants' Joint Response to the Motion of Pl. BacPlas, Inc. for Transfer and Consolidation of Related Actions Pursuant to U.S.C. § 1407

**E**     08/13/2008  JPML Transfer Order

**F**     05/04/2012  Defendants' Memorandum In Support of Tag Along Notice

**G**     06/01/2012  Defendants' Memorandum In Response to Motion to Vacate Conditional Transfer Order

**H**     05/17/2012   Defendants' Memorandum In Support of Motion to Stay Pending a Decision by the U.S. JPML

**I**     08/08/2012  JPML Order Vacating Conditional Transfer Order

**J**     09/28/2012   Email to Douglas Besman from Matthew Tenerowicz with attachments

**K**     10/12/2012  Email to Jeffrey Williams from David Cooper

**L**     10/10/12   Motions in Support of Pro Hac Vice Applications for John R. Fornaciari and Jeremy Keim

**M**     10/17/2012   Letter to John A.  Massalon and Christy Ford Allen from David C. Eddy

**N**     11/08/2012  Letter to Adam S. Paris from David C. Eddy

**O**     11/24/2012   Email to Robert Thielhelm from David D. Eddy with attachment

**MOTION**

Plaintiff Nestlé USA, Inc. and its co-plaintiff affiliates (collectively "Nestlé") and Plaintiff YRC Worldwide, Inc. and its co-plaintiff affiliates (collectively "YRCW")[1] move to deny the <u>pro</u> <u>hac</u> <u>vice</u> application of John R. Fornaciari and to disqualify Robert W. Thielhelm, Mr. Fornaciari, and their law firm Baker & Hostetler LLP ("Baker") from any further representation of Defendant Sea Star Line, LLC ("Sea Star") in <u>all</u> of the related above-captioned cases.  The specific grounds for this motion are (1) that representing a client whose interests are directly adverse to those of another current client constitutes a conflict of interest prohibited by Rule Regulating The Florida Bar 4-1.7, (2) that Nestlé and YRCW are current clients of Baker, and (3) that, because of the numerous common legal and factual issues in these four related cases, Baker's representation of Sea Star in the <u>Mondelez,</u> <u>Walgreen,</u> and <u>Home Depot</u> cases is and will continue to be directly adverse to the interests of Nestlé and YRCW and, thus, is prohibited.

**SUPPORTING MEMORANDUM OF LAW**

**I.     OVERVIEW**

Baker has admitted to this Court that: (1) Nestlé and YRCW are current clients of Baker; (2) Baker's representation of Sea Star against the claims of Nestlé and YRCW creates conflicts under the Rules of Professional Conduct; and, (3) Nestlé and YRCW have not

---

[1] There are four (4) Nestlé entities and six (6) YRCW entities which are listed as claimants in the <u>Arrowpac</u> <u>Incorporated</u> complaint, Case 3:12-cv-1180-J-32JBT, ("<u>Arrowpac</u>").  The four Nestlé claimants are Nestlé USA, Inc., Nestlé Purina PetCare Company, Nestlé Puerto Rico, Inc., and Payco Foods Corp.  The six YRCW claimants are YRC Worldwide, Inc., New Penn Motor Express, Inc., USF Reddaway, Inc., YRC Inc., YRC Enterprise Services, Inc., and YRC Logistics Services, Inc.

waived Baker's conflicts.   Mr. Thielhelm of Baker stated that "we represent various subsidiaries of two of the plaintiffs . . . a couple of the Nestlé entities and a couple of the YRC entities. . . . there is a conflict with . . . those plaintiff entities.  And we've asked for a waiver and they have not provided one."  (Joint Prelim. Pretrial Conference Tr. 9-10, Jan. 11, 2013, ECF No. 66 in <u>Arrowpac</u>.)  These admissions mandate disqualification of Baker.  This is not an abstract issue, as Baker has already taken actions directly and materially adverse to the significant antitrust claims that Nestlé and YRCW have against Sea Star and Baker plans to continue to do so.

On October 26, 2012, Sea Star admitted that "**Mr. Fornaciari** [the lead Baker lawyer] **has been legal counsel to Sea Star for more than a year regarding the Puerto Rico Cabotage matters specifically**" and Baker has "**represented [Sea Star] for more than a year in the Puerto Rico Cabotage matters**."  (**Ex. A**, 10/26/12 letter from Sea Star counsel at 2-3; emphasis added.)  During this one year period prior to October 2012 (<u>i.e.</u>, from at least September 2011 to September 2012), the only pending or potential civil claims against Sea Star were those of the opt-out Plaintiffs in these four related cases, including Nestlé and YRCW, and a state court case dismissed in August 2012.[2]  Accordingly, Baker's undisclosed representation of Sea Star during this period of September 2011-September 2012 necessarily was materially adverse to Nestlé and YRCW.

Indeed, on September 10, 2012, Baker filed two common motions to dismiss the claims of all plaintiffs in all the pending cases in the District of South Carolina (using a

---

[2] <u>Caribbean Shipping Services, Inc.</u> v. <u>Sea Star Line, LLC, et al.</u>, filed in the Circuit Court, Fourth Judicial Circuit, for Duval County, Florida, Case No. 16-2008-CA-008795, ("<u>Caribbean Shipping</u>") also asserted claims arising out of this same conspiracy. Baker did not appear in that case.

combined caption), including the claims of Nestlé and YRCW.  Baker stated that "Plaintiffs in the . . . above-captioned actions (the 'Opt-Out Actions') all assert claims under Section 1 of the Sherman Act arising from the same alleged price fixing conspiracy which purportedly existed from May 2002 to April 2008 involving rates for ocean freight shipping between the United States mainland and Puerto Rico."  (**Ex. B**, Mot. To Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) by Def. Sea Star Line, LLC 9, Sept. 10, 2012.)  Baker argued that the claims of Nestlé and YRCW against Sea Star had to "be dismissed in their entirety" (1) because "plaintiffs' private antitrust claims . . . are barred by the Supreme Court's filed rate doctrine" (<u>Id.</u> at 1), and (2) because of improper venue.  (**Ex. C**, Def. Sea Star Line, LLC's Mot. To Dismiss for Improper Venue Pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(A) or, in the Alternative, to Transfer Venue to the M.D. FLA.  Pursuant to U.S.C. § 1404(A) 1, September 10, 2012.)  Baker filed these dispositive motions without having first disclosed Baker's conflicts to or obtained waivers from Nestlé and YRCW.

Baker now maintains that so long as it does not enter an appearance in the <u>Arrowpac</u> case in this Court, Baker can nonetheless continue to represent Sea Star and assert defenses against the identical claims of the other Plaintiffs in the three related cases—<u>Walgreen</u>, <u>Home Depot</u>, and <u>Mondelez</u>.  Baker takes this position even though Sea Star has repeatedly admitted that all four of these cases are closely related and should be consolidated for pretrial management because they all assert the same claims about the same conduct and share multiple common questions of fact and law.  Indeed, Baker filed common motions to dismiss the claims of all Plaintiffs.

Baker, for example, maintains that it is entirely proper for it to draft and file motions to dismiss the identical claims of the non-Arrowpac plaintiffs before this Court under its alleged "filed rate doctrine" affirmative defense, so long as the Tanner Bishop firm files that same motion against Nestlé and YRCW.   Indeed, Michael Tanner told the Court at the January 11, 2013 Joint Pretrial Conference that "what we envisioned is a motion by Sea Star that would raise all of our issues.   **And that would be applicable to all four cases**."   (Joint Prelim. Pretrial Conference Tr. 48, Jan. 11, 2013, ECF No. 66; emphasis added.)   Pursuant to the Rules Regulating the Florida Bar, Baker's undivided duty of loyalty owed to Nestlé and YRCW, and the applicable case law, Baker cannot engage in such conduct.   To permit such an artifice would elevate form over substance and ignore both the reality of the underlying conflicts and the rule of undivided loyalty owed by Baker to its clients Nestlé and YRCW.

Because Plaintiffs' cases are still in the initial pleading stage and defendants will not respond to Plaintiffs' complaints until April 2, 2013, there will be no prejudice to Sea Star from disqualifying Baker.   Indeed, Sullivan & Cromwell represented Sea Star during the three-plus years of MDL 1960.   Sullivan & Cromwell also represented Sea Star for the first six months when these cases were pending in the District of South Carolina.[3]   Sullivan & Cromwell likewise represented Sea Star before the Judicial Panel on Multidistrict Litigation in 2012.   Sea Star is represented in all these cases before this Court by the Tanner Bishop firm.   Sea Star and its affiliate defendant Totem Ocean Trailer Express, Inc. are one single corporate enterprise along with their parent defendant Saltchuk Resources, Inc., and they continue, we believe, to coordinate their defense under Sullivan & Cromwell.

---

[3] Sullivan & Cromwell represented Sea Star from February 2011 through August 2012 in Caribbean Shipping, and Tanner Bishop represented Saltchuk Resources.

For these reasons, and as detailed further below, Baker must be disqualified from any further participation in or representation of Sea Star in all four related cases.

## II.     BAKER CONFLICT CHRONOLOGY

### A.     DOJ and FBI Raid Sea Star and Other Carriers

On April 17, 2008, the FBI and DOJ criminal investigation of Sea Star and the other Puerto Rico carriers became public when they served search warrants authorized by this Court.  Multiple class action cases were filed and the parties moved the JPML to transfer and consolidate all pending and future-filed cases for pretrial management before a single court.

### B.     Sea Star Has Consistently Sought the Consolidation for Pretrial Management of All Cases Against It

For four years, Sea Star has sought to have all cases against it relating to the Puerto Rico cabotage antitrust conspiracy consolidated for pretrial management in one court because it maintained that all such cases asserted the same claims, arose out of the same conduct, and shared numerous common questions of law and fact.  In June 2008, Sea Star and the other defendants urged the JPML that all pending actions relating to this price-fixing conspiracy and "**any subsequently-filed actions** should be consolidated in a single forum for coordinated and consolidated proceedings."  (**Ex. D**, Defs.' Joint Response to the Mot. of Pl. BacPlas, Inc. for Transfer and Consol. of Related Actions Pursuant to U.S.C. § 1407 2, June 20, 2008, ECF No. 34, 2; emphasis added.)   Sea Star asked that all such actions be consolidated for pretrial management before this Court. (Id. at 19-20.)  Sea Star identified a long list of the "common questions" among these civil antitrust cases that it asserted required pretrial consolidation of all cases in this District, as follows:

> (a) whether the Defendants engaged in an unlawful combination and conspiracy among themselves to fix, raise, maintain, and/or stabilize prices in the Puerto Rico Trade;
>
> (b) the identity of the participants in the Defendants' alleged conspiracy, if any;
>
> (c) the duration of the Defendants' alleged conspiracy and the nature and character of the acts performed by Defendants in furtherance of the conspiracy, if any;
>
> (d) whether the Defendants' alleged conspiracy violated Section 1 of the Sherman Act;
>
> (e) whether the alleged conduct of the Defendants caused cognizable antitrust injury to the business or property of the Plaintiffs . . .;
>
> (f) the effect, if any, of the Defendants' conspiracy on the prices of shipping in the Puerto Rico Trade…; and
>
> (g) whether any plaintiffs . . . suffered antitrust injury and, if so, the amount of any recoverable damages.

(Id. at 4.)  Sea Star further acknowledged that: "[i]n an antitrust case, the conduct of the defendants and their employees and officers in furtherance of the alleged conspiracy is the **central issue** in the litigation."  (Id. at 6; emphasis added.)  Baker cannot defend Sea Star on this laundry list of common questions without taking positions that are directly and materially adverse to Nestlé and YRCW.

On August 13, 2008, the JPML transferred and consolidated all cases before Judge Dominguez in the District of Puerto Rico as MDL 1960—In re Puerto Rico Cabotage Antitrust Litigation.  In its Order the JPML held:

> **we find that these actions involve common questions of fact** . . . These actions share factual questions relating to allegations that defendants conspired to fix prices of cabotage services to and from Puerto Rico in violation of the Sherman Antitrust Act.

(**Ex. E**; Transfer Order, Aug. 13, 2008, ECF No. 49, emphasis added.)

Baker did not represent Sea Star in MDL 1960, Sullivan & Cromwell did.  No formal discovery was taken in MDL 1960 from Sea Star or the other carriers. Sea Star, Horizon Lines, and Crowley Liner Services all entered into settlements with the class. Nestlé, YRCW, and all the other Plaintiffs in the four cases now before this Court opted out of those class settlements. Final judgments were entered for the defendants on those class settlements on August 30, 2011 and the MDL was terminated.

### C.      Sea Star Pleaded Guilty and the Opt-Out Plaintiffs Filed Suit

Shortly thereafter, on December 19, 2011, Sea Star pleaded guilty to participating in a conspiracy from May 2002 through April 2008 in violation of the antitrust laws.  Sea Star admitted that, because of this conspiracy, it charged customers, including Plaintiffs, "collusive and noncompetitive rates and surcharges."

The Arrowpac Plaintiffs (including Nestlé and YRCW) and Plaintiffs in the related cases filed suit in the District of South Carolina in April 2012.  All Plaintiffs sued Sea Star and the claims set forth in those actions were identical as all Plaintiffs sought overcharge damages for the six-year conspiracy, admitted to by Sea Star, its affiliated Defendants, and their co-conspirators.

### D.      Sea Star Again Urged Consolidation of Plaintiffs' Identical Cases

In May 2012, Sea Star petitioned the JPML to transfer all Plaintiffs' cases for consolidated pretrial management to the terminated MDL 1960 in Puerto Rico.  In urging consolidation of the cases, Sea Star again stressed that Plaintiffs all asserted common claims arising out of common facts with common questions.

- "Plaintiffs in the [four] cases . . . **allege the same claims** . . . that Sea Star, Crowley and other providers of Puerto Rican cabotage services violated Section 1 of the Sherman Act."  (**Ex. F**, Defs.' Mem. in Support of Tag Along Notice 4-5, May 4, 2012; ECF No. 76; emphasis added.)

- "**Plaintiffs cannot and do not dispute that their Opt-Out Actions share common questions of fact. . . .  Plaintiffs in the Opt-Out Actions assert the same claims under Section 1 of the Sherman Act arising from the same alleged antitrust conspiracy at issue**."  (**Ex. G**, Defs.' Mem. in Response to Mot. to Vacate CTO No. 6 2, June 1, 2012, ECF No. 155; emphasis added.)

- "Indeed, **the Complaint in this action and those in the other Opt Out Cases assert the very same federal antitrust claims under Section 1 of the Sherman Act, based on the very same core of alleged facts**, . . . (**Ex. H**, Defs.' Mem. in Support of Mot. to Stay Pending a Decision by the U.S. J.P.M.L. 2-3, May 17, 2012, ECF No. 60-4, emphasis added.)

On August 8, 2012, the JPML denied Sea Star's motion to transfer Plaintiffs' cases to Puerto Rico, allowing Plaintiffs' cases to move forward in the District of South Carolina. The JPML held: "It is undisputed that these actions share questions of fact . . . ."  (**Ex. I**, Order Vacating Conditional Transfer Order 1, Aug. 8, 2012, ECF No. 160.)

### E.       Baker's First Appearance for Sea Star On the Record

On September 10, 2012, while the Nestlé, YRCW and related cases were still pending in the District of South Carolina, Baker first appeared on the record.  Baker's first appearance was to directly attack the claims of Nestlé and YRCW by filing two motions to dismiss all of the Plaintiffs' cases against Sea Star, including the claims of Nestlé and YRCW, asserting that (1) all Plaintiffs' claims were barred by the "filed rate doctrine" and (2) venue was improper in the District of South Carolina.  (See **Exs. B and C**.)  Mr. Fornaciari of Baker appeared as counsel for Sea Star on these motions to dismiss, noting his pro hac vice

application was "forthcoming." (Id.)  Only <u>after</u> Baker filed these motions to dismiss did Baker eventually disclose the conflicts and seek waivers from Nestlé and YRCW.

        **F.**       **Baker Finally Sought Waivers—But Nestlé and YRCW Declined**

           **1.**       **Nestlé Declined to Waive Baker's Admitted Conflict**

Almost three weeks after filing these dispositive motions, Baker emailed Nestlé in-house counsel that it "has been asked to represent a shipping company [Sea Star] that is being sued by 40+ plaintiffs, 3 of which are Nestlé entities." (See **Ex. J**, 9/28/12 email to Douglas Besman from Matthew Tenerowicz.)  Baker's proposed waiver letter for Nestlé, attached to the email, acknowledges Baker's "conflict of interest": "**[a]lthough our ongoing representation of Nestlé concerns unrelated matters, a conflict of interest nevertheless exists because we would be representing one client, Nestlé, in a matter involving another client, Sea Star, in which the respective interests of the clients differ.**" (Id.; emphasis added.)  Baker further acknowledged the "resulting" need for Nestlé to waive the conflict in order to continue its representation of Sea Star. (Id.)

In its effort to coax a waiver from Nestlé, however, Baker contended that Nestlé's damages claim against Sea Star was trivial because Sea Star's "sales during the period" to Nestlé were only "$12,000," "Sea Star was not Nestlé's principle [sic] cabotage carrier," and the "connection" between Sea Star and Nestlé's claim was too "remote." (Id.)  Baker concluded by telling Nestlé in the cover email that: "**It appears as though the amount of the claims by the Nestlé entities is not significant**." (Id.; emphasis added.)  These Baker statements to its client Nestlé were misleading and were intended to convince Nestlé that it

did not in fact have a material claim against Sea Star—the last remaining unsettled defendant in the Puerto Rico cabotage cases.

When Baker made these statements it knew that, under the well-established principle of federal antitrust law that conspirators are jointly and severally liable, Sea Star is liable to Nestlé not only for the overcharges directly caused to Nestlé on Sea Star's sales, but also for all of the overcharges inflicted on Nestlé in the sales by Sea Star's co-conspiring carriers Horizon Lines and Crowley (which also both pleaded guilty).  See Texas Ind. Inc. v Radcliff Materials, Inc., 451 U.S. 630, 645-646 (1981).  When Baker sent this letter, Baker knew full well that Nestlé's claim is anything but "insignificant."  Sea Star faces joint and several liability for a treble damages verdict for all of the affected sales by Sea Star and its admitted co-conspirators to Nestlé—which could be tens of millions of dollars.

Notwithstanding Baker's representations, Nestlé declined to waive Baker's admitted conflict.

### 2.     YRCW Declined to Waive Baker's Admitted Conflict

Likewise, long after the motions to dismiss were filed by Baker, Baker sought a waiver from YRCW of the admitted conflict to permit Baker to represent Sea Star in the cabotage antitrust litigation.  Also declining to waive the conflict, YRCW told the Baker lawyers in no uncertain terms that the cabotage litigation was "a major case for us."  (**Ex. K**, 10/12/12 email to Jeffrey Williams from David Cooper.)  Further, YRCW made it clear to Baker that it felt that there was **"no workable way for Baker Hostetler to adequately represent Sea Star without putting our best interests at risk, even if adequate measures**

are taken to isolate the Baker 'Cabotage Group'" from Baker lawyers handling YRCW

matters.  (Id.; emphasis added.)

>G.     Baker <u>Pro Hac Vice</u> Applications Were Filed in South Carolina
>       then Withdrawn

On October 10, 2012, having failed to obtain waivers from Nestlé and YRCW, Sea

Star nevertheless filed motions for <u>pro hac vice</u> admission for Mr. Fornaciari and Mr. Jeremy

Keim, both of Baker, in the <u>Arrowpac</u> case and the related cabotage antitrust cases pending

in South Carolina.  (**Ex. L**, Mot. in Support of Pro Hac Application for John R. Fornaciari

and Jeremy Keim, Oct. 10, 2012, ECF Nos. 109-110.)   By letter on October 17, 2012,

counsel for Nestlé and YRCW objected to these filings as violating Rule 1.7 of the South

Carolina Professional Rules of Conduct (South Carolina's current client conflict rule) and

South Carolina Appellate Court Rule 404(c) governing the admission <u>pro hac vice</u> by non-

South Carolina lawyers.  (**Ex. M**.)  Sea Star withdrew the Baker <u>pro hac vice</u> motions on

October 25, 2012.

>H.     Sea Star Proposed "Conflicts Counsel" to Resolve Baker's
>       Admitted Conflicts

By letter dated October 26, 2012, Sea Star proposed that its local counsel in the

District of South Carolina could represent Sea Star as "conflicts counsel" as to the claims of

Nestlé and YRCW, while Baker would continue to defend Sea Star against all other

Plaintiffs' claims in the related actions, even though Sea Star previously had repeatedly

described these cases as identical and involving "common" questions of fact/law.  (**Ex. A**.)

As "support" for this novel "concept" of "conflicts counsel," Sea Star attached a law review

article, which readily acknowledged that the "concept" of conflicts counsel that it proposed

was <u>not</u> permitted under the accepted and adopted ethical rules.[4]  Sea Star also provided an unpublished case, <u>Sumitomo Corp. v. J.P. Morgan & Co., Inc.</u>, 2000 WL 145747 (S.D.N.Y. Feb. 8, 2000), that is easily distinguished as discussed *infra*.  (<u>Id.</u>)

Moreover, Sea Star admitted that Baker had been providing "legal counsel to Sea Star for more than a year regarding the Puerto Rico Cabotage matters specifically" and that Baker had "represented [Sea Star] for more than a year in the Puerto Rico Cabotage matters."  (<u>Id.</u> at 2-3.)  In other words, Baker, without any notice to Nestlé and YRCW, was already representing Sea Star at least six months before they first filed suit, but long after Nestlé and YRCW and the other <u>Arrowpac</u> Plaintiffs had begun to engage in in-person settlement discussions with Sea Star in December 2010.

## I.       Plaintiffs Re-File Their Cases in the Middle District of Florida

On October 29, 2012, the <u>Arrowpac</u> Plaintiffs (including Nestlé and YRCW) and Plaintiffs in the related actions voluntarily dismissed their cases without prejudice from the District of South Carolina and re-filed their actions in the Middle District of Florida.  By letter dated November 8, 2012, counsel for Nestlé and YRCW objected to Sea Star's contention that Baker could avoid its duty to completely withdraw from representing Sea Star by the artifice of using local lawyers as "conflicts counsel" while Baker still ran its defense. (**Ex. N**.)  Even if Sea Star were to retain separate "conflicts counsel" for the Nestlé and

---

[4] See **Ex. A**, and article attached thereto: Ronald D. Rotunda, *Resolving Client Conflicts by Hiring "Conflicts Counsel*," 62 Hastings L.J. 677 (2011).  While the author floated the idea of "conflicts counsel" to handle a "discrete/severable matter," he admits that the concept is barred by the current client conflict rules and would require that the Code of Professional Conduct be amended: "The general rule of legal ethics is that a law firm may not represent a client who is suing someone who is also a client of the law firm, even though (1) the two matters are unrelated, (2) a different law firm represents the client in that lawsuit, and (3) there is no risk that the lawyer would violate the confidences of any client.  This rule has bite, because courts routinely enforce it in the course of litigation by disqualifying the law firm."

YRCW pieces of the litigation, Baker "would remain in this litigation taking positions for Sea Star that would be directly and materially adverse to the claims of the Nestlé and YRCW Plaintiffs. e.g., the filed rate doctrine arguments asserted by Baker." (Id.)

### J.    Baker Seeks to Represent Sea Star in this District

On November 23, 2012, Robert W. Thielhelm of Baker's Orlando office entered an appearance in the three non-Arrowpac cases now pending in this Court.  Counsel for Nestlé and YRCW objected to this appearance by email to Mr. Thielhelm on November 24, 2012 and attached their November 8, 2012 letter of objections.  (**Ex. O**.)  On January 4, 2013, Sea Star moved for the admission pro hac vice of Mr. Fornaciari of Baker in all of the above-captioned cases, but for Arrowpac.  (Mot. To Appear Pro Hac Vice, Jan. 4, 2013, ECF Nos. 32, 20, 28.)  On January 9, 2013, counsel for Nestlé and YRCW noticed their intention in each of the cases to move to disqualify Baker from representing Sea Star.  (Arrowpac Incorporated Pls.' Memo. Regarding Scheduling Mot. To Disqualify Baker & Hostetler as Counsel for Sea Star Line, LLC, Jan. 9, 2013, ECF No. 65.)  Counsel for Nestlé and YRCW confirmed this intention at the January 11, 2013 Pretrial Conference.

### III.    ARGUMENT

It is well settled that federal courts have the power and responsibility to regulate the conduct of attorneys who practice before them.  In re Snyder, 472 U.S. 634, 645 n.6 (1985); United States v. Kitchin, 592 F.2d 900, 903 (5th Cir. 1979).  The conduct of attorneys appearing in this District is governed by the ABA Model Rules of Professional Conduct as modified and adopted by the Supreme Court of Florida to govern the professional behavior of members of The Florida Bar.  M.D. Fla. Local R. 2.04(d).  To disqualify a law firm from

concurrently representing a party whose interests are adverse, a client need only show that an attorney/client relationship exists.  Lincoln Associates & Const., Inc. v. Wentworth Const. Co., Inc., 26 So.3d 638, 639 (1st DCA 2010) (the lower court erred in denying motion to disqualify, where the subject law firm conceded the concurrent representation, and otherwise failed to show it had obtained written consent from affected client).

Rule 4-1.7(a)-(b) of the Rules Regulating the Florida Bar, in pertinent part, prohibits representation of a client that "will be directly adverse to another client" who otherwise does not give "informed consent, confirmed in writing or clearly stated on the record at a hearing." See R. Reg. Fla. Bar 4-1.7(a)-(b).  This prohibition against concurrent adverse representation is based on two principles.  "First, a client is entitled to his lawyer's 'undivided loyalty' as his 'advocate and champion.'. . . .  Second, a lawyer should never place himself in a position where a conflicting interest may, even inadvertently, affect the obligations of an ongoing professional relationship."  See Hilton v. Barnett Banks, Inc., 1994 WL 776971 at *3 (M.D. Fla. Dec. 30, 1994) (citations omitted).  The disqualification of any one lawyer under Rule 4–1.7 is imputed to all lawyers in his firm.  See Harrison v. Fisons Corp., 819 F. Supp. 1039, 1041 (M.D.Fla.1993), citing R. Reg. Fla. Bar 4–1.10(a).

Mr. Thielhelm of Baker admitted to this Court that "we represent various subsidiaries of two of the plaintiffs . . . a couple of the Nestlé entities and a couple of the YRC entities . . . there is a conflict with . . . those plaintiff entities.  And we've asked for a waiver and they have not provided one."  (Joint Prelim. Pretrial Conference Tr. 10, Jan. 11, 2013, ECF No. 66.)

**A.    Baker's Representation of Sea Star in the Cabotage Litigation is Directly Adverse to the Claims of Nestlé and YRCW**

A lawyer represents adverse interests when it becomes the lawyer's duty, on behalf of one client, to advocate for a result that "his duty to another client would require him to oppose."  See The Florida Bar v. Moore, 194 So. 2d 264, 269 (Fla. 1966).

The Middle District of Florida, in Hilton v. Barnett Banks, Inc., addressed the issue of disqualification on facts similar to here.   In Hilton, the affected client, Barnett Bank of Pinellas ("Barnett Pinellas"), was a subsidiary of the named defendant.  Barnett Pinellas was not a party to the litigation.  The Court found that the injunctive relief sought by the Plaintiffs against the defendant would have extended to Barnett Pinellas. 1994 WL 776971 at *3. Plaintiffs' counsel Battaglia Ross represented Barnett Pinellas in an unrelated matter.  Id. at 1.  The Middle District of Florida found that, even though Barnett Pinellas was not a named party to the suit, Battaglia Ross acted as an advocate against and was directly adverse to Barnett Pinellas.  The Court held that Rule 4–1.7 required disqualification of Battaglia Ross, as "[a] firm is per se ineligible to participate in an action if it has concurrently represented adverse interests at any point during the action."  Id.

First, Baker cannot deny that it has already acted in violation of the rule.  Despite having not obtained client waivers (and *before* ever disclosing the conflict to and requesting waivers from Nestlé and YRCW), Baker moved on behalf of Sea Star to dismiss Nestlé and YRCW's claims.  Baker's breach of its duty of loyalty to Nestlé and YRCW cannot be undone.   Second, as in Hilton, Baker cannot now avoid Rule 4-7.1 disqualification by arguing that the Nestlé and YRCW are not named parties in the other three related cases in which Baker is appearing.

Second, <u>any</u> motion Baker files and <u>any</u> argument Baker makes in defense of Sea Star in these cases inevitably will be directly and materially adverse to Nestlé and YRCW—whether filed by Baker or by Tanner Bishop in the <u>Arrowpac</u> case.   Baker proposes to continue to represent, without waiver, interests that directly contend with the interests of Nestlé and YRCW, in violation of the ethical rules.  <u>See</u> <u>Moore</u>, 194 So. 2d at 269.

**B.    Baker's Conduct is Unethical <u>Per</u> <u>Se</u> and Requires Its Disqualification**

"[T]his Rule as to adversity between concurrent clients provides no possible exception when the clients do not consent."  <u>Harrison</u>, 819 F. Supp. at 1041.

<u>Harrison</u> is instructive. McDermott, Will & Emery (MW&E) moved to be admitted <u>pro</u> <u>hac</u> <u>vice</u> for Defendant.  Plaintiffs moved to disqualify MW&E on the ground that MW&E also represented a named Plaintiff-Guardian, First Union, for several years in a variety of matters unrelated to the subject litigation.   First Union had been appointed guardian of property for the minor Plaintiff Harrison.  First Union was more than "a nominal party" in that it had fiduciary duties and its own commercial interest in the property's management.   MW&E did not obtain consent from First Union to the conflict of interest posed by MW&E's concurrent representation of the Defendant.  The Court denied MW&E's motion for admission <u>pro</u> <u>hac</u> <u>vice</u> and granted the Plaintiffs' motion to disqualify MW&E, holding, in part, that "[t]he business pressures of the modern practice of law cannot be permitted to erode the assurance of undivided loyalty upon which every client of a law firm is entitled to rely."  <u>Harrison</u>, 819 F. Supp. at 1042.

<u>Harrison</u> also makes clear that "Rule 4–1.10(a) imputes to all lawyers in a firm the disqualification of any of them under Rule 4–1.7."  <u>Harrison</u>, 819 F. Supp. at 1041.  In the

16

absence of a client's waiver of the conflict, "[s]creening of attorneys who had access to confidential information of the affected client which would prevent any taint from representation in the subject litigation "is beside the point in applying Rule 4–1.7.  The absence of a substantial relationship between the representations would be material if First Union had been a former client. See Rule 4–1.9.  It has no bearing on [conflicts of interest among current clients]."  Id.

Baker's assurances of undivided loyalty to Nestlé and YRCW have been breached. Despite not obtaining waivers from Nestlé and YRCW – and despite being told by YRCW, in response to the request, that Baker's dual and conflicted representation involves "a major case for us," and puts "our best interests at risk" -- Baker chose, and continues to choose, to press on with its representation of Sea Star, in clear dereliction of the duty of undivided loyalty owed to Nestlé and YRCW.

### C.      Sea Star's Reliance on Sumitomo is Misplaced

Sea Star relies on an unpublished case from the Southern District of New York, Sumitomo Corp. v. J.P. Morgan & Co., Inc., 2000 WL 145747 (S.D.N.Y. Feb. 8, 2000).  Sea Star's reliance on Sumitomo is misplaced.

### 1.      Sumitomo Applied a Far Different Standard than Applies Here

Sumitomo applied a *significantly different standard,* than that which governs disqualification for concurrent client conflicts in Florida.  Noting that "a party seeking disqualification must meet a high standard of proof before disqualification will be granted," the Sumitomo court stated that "disqualification is appropriate only if there is a significant risk that an attorney's conduct will taint the trial."  Id. at 3.  That is not the standard

governing Baker's duty of undivided loyalty to Nestlé and YRCW in Florida—a "trial taint" is not required.  The <u>Sumitomo</u> court held further that "in this Circuit, disqualification is only appropriate under Canon 5 where the attorney's conflict undermines a court's confidence in the vigor of the attorney's representation of his client." <u>Id.</u> at 4.  The "more limited" standard applied in <u>Sumitomo</u> has been widely rejected by other jurisdictions, and does not govern in Florida.  <u>See In re American Airlines, Inc.,</u> 972 F.2d 605, 610-11 (5th Cir. 1992), <u>cert. denied,</u> 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993) (expressly rejecting the "more limited test" of disqualification used in <u>Sumitomo</u>); <u>see also</u> <u>Sullivan County Reg'l Refuse Disposal Dist. v. Town of Acworth,</u> 141 N.H. 479, 482-483, 686 A.2d 755, 757 (N.H. 1996) (noting rejection of the New York conflicts standard by the majority of jurisdictions).

The Fifth Circuit in <u>In re. American Airlines, Inc.</u> observed that

> [s]ome courts have taken the position Northwest advances, namely that '[t]he business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it.' [Citing the New York cases relied upon by the court in <u>Sumitomo.</u>]  An attorney's ethical violation by itself does not warrant disqualification under this approach. Rather, disqualification is proper only in cases where a court also finds that the unethical conduct threatens to taint the trial. . . . This circuit, however, has struck a different balance, electing to remain 'sensitive to preventing conflicts of interest.' . . .  We have squarely rejected this hands-off approach in which ethical rules 'guide' whether counsel's presence will 'taint' a proceeding, holding instead that a '[d]istrict [c]ourt is *obliged* to take measures against unethical conduct occurring in connection with any proceeding before it.'

972 F.2d at 610-11; citations omitted.

## 2.      Unlike Paul Weiss, Baker Failed to Withdraw

<u>Sumitomo</u>, however, does make clear what Baker *should have done, but failed and refused to do* in this matter—promptly withdraw.  The law firm of Paul Weiss represented Sumitomo from the very outset in 1995 (4 years before litigation arose) in investigating the

activities of an apparent rogue copper trader at Sumitomo in Japan and representing Sumitomo before governmental agencies and in later civil litigation. <u>Sumitomo</u>, 2000 WL 145747 at *1. When Paul Weiss learned that several of its other clients, including Chase, might be adverse to Sumitomo in potential copper-trading related litigation, it immediately advised Sumitomo that it could not represent Sumitomo "in connection with any future litigation with those clients." <u>Id.</u> at *1-2. When another Paul Weiss client, Ocean View, sued Sumitomo and Ocean View refused to waive Paul Weiss's conflict, Paul Weiss withdrew. <u>Id.</u>

Baker did just the opposite here: (1) Baker took on representation of Sea Star in the Puerto Rican cabotage matter in approximately October 2011 and began working behind the scenes for Sea Star "for more than a year" against the interests of its long time clients Nestlé (which it has been representing since approximately 2007) and YRCW (which it has been representing since at least 2006). Sea Star knew these companies had opted out of the MDL class settlements, and Sea Star had in fact engaged in formal settlement discussions with Nestlé and YRCW starting in December 2010; (2) Baker did not disclose the conflicts during this year period; (3) Baker filed motions to dismiss the claims of Nestlé and YRCW still without having disclosed the conflict or sought waiver; (4) Baker filed motions for <u>pro hac vice</u> admission into the cases against Nestlé and YRCW without waiver/consent; and (5) only after seeking dismissal of the claims of Nestlé and YRCW did Baker seek waivers, including through patent misstatements to Nestlé. On September 10, 2012, Sea Star, through Baker, filed its primary motion to dismiss on its purported "filed rate doctrine" affirmative defense against <u>all</u> Plaintiffs, including Nestlé and YRCW. Baker has stated that it will file that same

motion to dismiss against all Plaintiffs in this Court, except that Tanner Bishop will file it as to Nestlé and YRCW.

Baker/Sea Star asks this Court to believe that it will make a material difference under Rule 4-1.7 if a lawyer other than a Baker lawyer files that same motion, takes discovery, and/or advances arguments common to each of the cases.  It does not.  Baker has and continues to violate its duty of loyalty to Nestlé and YRCW.  Baker created the conflict, not Nestlé and YRCW.

### 3.        No Prejudice to Sea Star When Baker Disqualified

The four related and newly commenced cases in this District are at the very first stage of the litigation.  Responsive pleadings have yet to be filed.  Sea Star has a bevy of other lawyers—many of whom have been handling the cabotage cases for Sea Star for four years. Sea Star was represented throughout the MDL 1960 by Sullivan & Cromwell.  For the first six months of the District of South Carolina cases, Sullivan & Cromwell represented Sea Star before the JPML and the District of South Carolina, and for eighteen months before the Circuit Court for the Fourth Judicial Circuit of Florida.  The Sea Star defendants – while nominally represented by separate firms before this Court – are in fact one single corporate enterprise under Saltchuk and, from all appearances, have been continuing to coordinate their defense under the direction of Sullivan & Cromwell.  Sea Star has counsel in this District with the Tanner Bishop firm.  Baker did not formally appear in the opt-out litigation until September 2012.  Indeed, Baker was not involved in the MDL 1960 in Puerto Rico from 2008 through final judgments in August 2011.

**IV.**      <u>**CONCLUSION**</u>

Baker has acted in complete disdain of its ethical obligations and duties of loyalty running to Nestlé and YRCW.   Nestlé and YRCW ask that the Court deny the Baker attorneys' admission <u>pro</u> <u>hac</u> <u>vice</u> and disqualify Baker from any further participation in any of the four related cases.

<div style="margin-left: 35%;">

s/ David C. Eddy_____
David C. Eddy (Admitted *Pro Hac Vice*)
Marguerite S. Willis
Florida Bar No. 188950
Dennis J. Lynch (Admitted *Pro Hac Vice*)
Travis C. Wheeler (Admitted *Pro Hac Vice*)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, South Carolina  29202
Telephone:     803.771.8900
Facsimile:     803.253.8277
Email: deddy@nexsenpruet.com
Email: mwillis@nexsenpruet.com
Email: dlynch@nexsenpruet.com
Email: twheeler@nexsenpruet.com

Charles P. Pillans, III
Florida Bar No. 0100066
BEDELL, DITTMAR, DeVAULT, PILLANS & COXE, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL 32202
Telephone:     904.353.0211
Facsimile:     904.353.9307
Email: cpp@bedellfirm.com

**Counsel for <u>Arrowpac</u> Plaintiffs Nestlé USA, Inc., Nestlé Purina PetCare Company, Nestlé Puerto Rico, Inc., Payco Foods Corp.; YRC Worldwide Inc., New Penn Motor Express, Inc., USF Reddaway, Inc., YRC Inc., YRC Enterprise Services, Inc., and YRC Logistics Services, Inc.**

</div>

D. Culver Smith III
Florida Bar No. 105933
CULVER SMITH III, P.A.
500 South Australian Avenue
Suite 600
West Palm Beach, FL 33401
Telephone:     561.598.6800
E-mail:  csmith@culversmithlaw.com

**Counsel for <u>Arrowpac</u> Plaintiffs Nestlé and YRCW for limited purpose of proceedings on motion to disqualify Baker & Hostetler LLP**

| January 25, 2013 Jacksonville, Florida | |
|---|---|

22

# CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2013, I caused a true and correct copy of the Arrowpac Incorporated Plaintiffs' **Motion to Disqualify Baker & Hostetler, LLP as Counsel for Sea Star Line, LLC and Memorandum in Support** to be filed and served on counsel of record via ECF.

/s/ David C. Eddy