UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ARROWPAC INCORPORATED, et al.

    Plaintiffs,

v.                                              CASE NO.:    3:12-cv-01180-TJC-JBT

SEA STAR LINE, LLC, SALTCHUK
RESOURCES, INC., TOTEM OCEAN
TRAILER EXPRESS, INC. and
LEONARD SHAPIRO,

    Defendants.
_____/

**DEFENDANTS SEA STAR LINE, LLC AND SALTCHUK RESOURCES, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO
<u>COMPEL PRODUCTION OF DOCUMENTS</u>**

Sea Star Line, LLC ("Sea Star") and Saltchuk Resources, Inc. ("Saltchuk") respectfully submit this memorandum of law in opposition to Plaintiffs' motion to compel the production of all documents "given to or taken by the U.S. Department of Justice ("DOJ")." Pls.' Mot. to Compel 1, ECF No. 120.

**PRELIMINARY STATEMENT**

Federal Rule of Civil Procedure 26 makes plain that the threshold limitation on discovery is that information sought must be relevant to the claims or defenses at issue in the case. Rule 34(b)(1)(A) follows from this foundational concept, requiring parties to serve requests for production that "describe with reasonable particularity each item or category of items to be inspected," forcing parties seeking discovery to limit the scope of their requests to those particular matters relevant to the case at hand. Here, plaintiffs' demand subverts both rules, asking this Court to compel production of a massive amount of information taken by or produced

to the U.S. Department of Justice ("DOJ"), without regard to the relevance of the materials to this case and outside the course of ordinary discovery.

Plaintiffs' gambit is exactly what the Federal Rules seek to avoid. Plaintiffs' argument, in essence, is that the data has been collected and is therefore easy to produce, such that the question of the relevance of this material should be bypassed in favor of expedience. But this approach is not contemplated by the Federal Rules and, in an age when the burden of producing large volumes of information is constantly decreasing, it ignores the basic protections afforded parties by the discovery process. To be sure, there are documents within the materials seized by the DOJ that will be relevant to plaintiffs' claims, yet there is a much larger volume of information contained within that data set that has no bearing on the claims brought by these plaintiffs. The DOJ's efforts looked broadly at the business of Sea Star and the alleged conspiracy, going beyond the plaintiffs involved here and even past the Puerto Rico trade. Plaintiffs' claims do not reach so far and plaintiffs do not operate with the same mandate as the United States government. Plaintiffs are not entitled to piggyback on the DOJ's ability to execute search warrants; they must abide by the Federal Rules—they must serve discovery, and they are entitled only to that information relevant to their claims and the defenses to be raised.

Because there is no basis in law to exempt plaintiffs from the requirements of the Federal Rules, plaintiffs' motion must be denied.

**DOJ INVESTIGATION AND DOCUMENT PRODUCTION**

On April 17, 2008, the DOJ and FBI executed a search warrant at Sea Star's Jacksonville office in connection with the DOJ's investigation into alleged antitrust violations in connection with the Puerto Rico trade. The search warrant gave the DOJ a broad mandate, allowing it to seize data from Sea Star's "management, pricing, or sales personnel" and all documents relating

to Sea Star's relationships with its customers "regarding coastal freight transportation services between the United States and Puerto Rico." *See* Declaration of Sheri Karnopp at Exhibit A, attached hereto as Exhibit 1. The warrant's scope was not limited to specific individuals or customers, but instead called for the seizure of all of Sea Star's records falling within six broad categories of information. The issuing judge recognized at the outset that the seizure could result in the taking of materials beyond the scope of the investigation and included the following hand-written condition on the face of the warrant: "[i]f no evidence is found in the computer equipment and electronic storage devices by the end of the 30 day period, or if any electronically stored information is outside the scope of the warrant, such shall be returned promptly." During the DOJ's execution of the search warrant, the DOJ seized electronic records from more than 20 employees, including Lotus Notes databases, Blackberries, personal laptops, individual hard drives, and paper documents from individuals' offices and briefcases. *See* Exhibit 1, at ¶ 7. The government did not review any of the paper or electronic material at Sea Star's office. *Id.* ¶ 8. Rather than discriminate between the relevant and irrelevant, the DOJ simply seized the documents and data. *Id.*

On April 17, 2008, the DOJ also served grand jury subpoenas on Saltchuk, Sea Star, and Totem Ocean Trailer Express, Inc. ("Totem Ocean") during the course of a DOJ investigation involving Puerto Rican and Alaskan trade. Pursuant to the subpoenas, Defendants ultimately produced voluminous records and data with regard to not only their Puerto Rican trade activities, but also Totem Ocean's Alaskan trade activities[1].

---

[1] Plaintiffs' effort to obtain Totem Ocean's productions to the DOJ are separately addressed in Totem Ocean's response to plaintiffs' motion. References herein to documents regarding the Alaska trade relate only to those documents produced by Saltchuk. To the extent that the arguments advanced by Totem Ocean are relevant to the documents produced by Saltchuk, such arguments are incorporated herein by reference.

3

During subsequent review and cataloguing of the seized documents and data, then-counsel for Sea Star determined the DOJ had seized significant amounts of irrelevant, confidential, and privileged material. *Id.* at ¶¶ 9-10. This material included such things as Sea Star staff emails discussing favorite sports teams, personal communications with family and friends, and outside communications with personal banking or financial advisors. *Id*. It also included communications between Sea Star employees and Sea Star's attorneys, as well as sensitive trade secret information. *Id.*[2]

Since the initiation of this litigation, plaintiffs have demanded production of "all documents and data produced to or seized by the [DOJ] or FBI." *See, e.g.*, Case Management Report 2, ECF No. 61; Am. Disc. Plan & Mediation Proposal 6, ECF No. 110; Second Am. Disc. Plan & Mediation Proposal 5, ECF No. 114. Plaintiffs' repeated demand has ignored the processes and requirements of the Federal Rules regarding discovery, even though Plaintiffs are well aware that the DOJ documents they seek include irrelevant information, confidential documents and privileged communications. Tellingly, plaintiffs do not argue that they are entitled to the confidential, privileged, and otherwise irrelevant information. Instead, they simply argue because the burden of production would be relatively slight, there is no harm in producing otherwise non-discoverable documents.

On December 4, 2013, plaintiffs served their first request for production. *See* Pls.' First Req. for Produc., attached as Exhibit 2. Though many of the requests overlap, Request 12 most closely relates to the demand put at issue in plaintiffs' motion:

> Documents, data, materials and submissions produced to or taken by any U.S. governmental entity (including the U.S. Department of Justice – "DOJ") relating

---

[2] To clarify, while the DOJ did seize privileged documents from Sea Star during the execution of the warrant, it did return the privileged material pursuant to a claw back agreement. However, the way Plaintiffs' motion is written, it seeks even the documents later returned to Sea Star because those documents were initially "taken" by the DOJ. *See* Pls.' Mot. to Compel 1.

to the conspiracy at issue in this action, by Sea Star, TOTE, Saltchuk or ASG, including, but not limited to, documents provided to the U.S. Postal Service with respect to its claims arising out of the conspiracy at issue in this case, and documents produced to Sea Star by DOJ from seized laptops and other devices per 12/4/12 filing by DOJ in Peake criminal case, 3:11-cr-00512 (D.P.R.).

*Id.* Defendants' response to plaintiffs' request for production is due on January 6, 2014.

**ARGUMENT**

**I. PLAINTIFFS' DEMAND IGNORES THE FEDERAL RULES OF CIVIL PROCEDURE AND IS ESSENTIALLY MOOTED BY PROGRESS IN THE CASE**

Plaintiffs' demand and their motion ignore the fundamental processes for the production of documents and information in civil litigation. It is black-letter law that, in order to obtain information from an opponent in litigation, a party must await the commencement of discovery in accordance with any orders that may be entered by the court and propound requests for production in accordance with Rule 34. The opposing party is then entitled to review the request and to make objections, including to the extent that the requests seek documents beyond the scope of discovery provided in Rule 26. *See* Fed. R. Civ. P. 26(b)(1), 34(b)(2). Parties are entitled to seek protection for, among other things, confidential and sensitive information and to withhold documents that constitute work product or which are protected from discovery by the attorney-client privilege or other recognized immunities from discovery. *See* Fed. R. Civ. P. 26(b)(5), 26(c).

These rules do not change based on the existence of prior litigation. The Federal Rules cannot be set aside simply because "Sea Star has yet to produce a single document in five years of [other] civil litigation," nor is Rule 26's relevance limit broadened because information sought can be readily produced. *See* Pls.' Mot. to Compel 2. Plaintiffs' motion fundamentally rests on these erroneous positions and asks the Court to bypass the requirements of the Federal Rules.

5

Without more, the plain language of the Federal Rules establishes that plaintiffs' insistence on a wholesale production, without service of a request, without affording defendants the opportunity to object and without regard to the relevance, sensitivity or privileged nature of the documents, is without merit.

Plaintiffs' recently served discovery essentially moots plaintiffs' demand and further demonstrates the fallacy of their position. Stated simply, discovery has now commenced in accordance with the Court's order of December 3, 2013, plaintiffs have served their requests for production, and defendants will respond in accordance with the Federal Rules. Plaintiffs' motion is rendered unnecessary by the fact that plaintiffs are now properly in a position to pursue discovery of the information they have improperly demanded to date and seek through this motion.

More importantly, however, plaintiffs' requests reveal the substantive error of their demand for an inclusive production of the materials seized by the DOJ. Again, plaintiffs have requested the production of:

> Documents, data, materials and submissions produced to or taken by any U.S. governmental entity (including the U.S. Department of Justice – "DOJ") **relating to the conspiracy at issue in this action**, by Sea Star, TOTE, Saltchuk or ASG, including, but not limited to, documents provided to the U.S. Postal Service with respect to its claims arising out of the conspiracy at issue in this case, and documents produced to Sea Star by DOJ from seized laptops and other devices per 12/4/12 filing by DOJ in Peake criminal case, 3:11-cr-00512 (D.P.R.).

Pls.' Req. for Produc. 12-13 (emphasis added). Without prejudicing defendants' ability to object to this request, it is, at the very least, more tailored than plaintiffs' insistence that Defendants produce everything seized by or produced to the DOJ by virtue of its limitation to documents "relating to the conspiracy at issue in this action." It is the absence of such a limitation on plaintiffs' motion that renders it completely improper.

Plaintiffs' argument that the production of the DOJ documents should proceed *en masse* because those documents have already been collected misses the point entirely. A party may not be compelled "to produce all documents from prior litigation when [the plaintiff] has not established how they will be relevant or what that prior discovery contains." *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 355 (D.S.D. 2013). *See also Estate of Chance ex rel Humphreys v. First Corr. Med. Inc.*, 329 F. App'x 340, 343 (3d Cir. 2009) (upholding district court denial of plaintiff-inmate's request to compel production of all documents produced by the defendant to the DOJ because the document request would include materials "that had nothing to do with th[e] case"); *cf. In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C. 2005) (denying plaintiffs' discovery request under 15 U.S.C. § 77z-1(b)(1) because a request for "documents that have already been produced in connection with governmental and regulatory investigations" seeks documents "possibly irrelevant to the claims likely to be raised [in the lawsuit]"). This is equally true when the documents are contained in an easily-identifiable format or when the requesting party volunteers to conduct the search. *See Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) ("No party seeking information is entitled to roam an adversary's files, regardless of who bears the expense, in the absence of a proper discovery request."). What the rules and these cases teach is that it is not enough to simply identify that a database exists that contains some relevant documents and then demand that it be produced in its entirety. This is especially true where, as here, the document collection largely resulted from a governmental seizure that took documents without regard to their relevance.

Plaintiffs' motion turns these basic discovery principles on their head and essentially asserts that relevance is irrelevant if the burden of production is slight. *Cf. Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) (explaining that a

7

non-party has standing to assert a subpoena seeks irrelevant information because "if the sought-after documents are not relevant . . . then any burden whatsoever imposed [on the third-party] would be by definition 'undue'"). But it is not enough to ask the court "[w]hat is the 'burden' or 'harm' to producing a small number of documents within the DOJ production that may not be relevant?" Pls.' Mot. to Compel 8. Plaintiffs are only entitled to that which must be produced in accordance with the Federal Rules. And it cannot be disputed that volumes of documents not relevant to an alleged conspiracy to fix prices in Puerto Rican cabotage were produced to the DOJ. *See* Exhibit 1 at ¶¶9, 14.

Plaintiffs' motion knowingly demands irrelevant, privileged, and confidential information, and the number of non-discoverable documents is more than "small." The scope of the DOJ investigation of Sea Star, Saltchuk, and Totem Ocean was not the same as the scope of the issues in this case. While this lawsuit concerns only claims brought by certain shippers in connection with an alleged rate-fixing conspiracy with respect to shipping between Jacksonville, Florida and San Juan, Puerto Rico, the government investigation of the Defendants went beyond the claims at issue here into the entirety of Sea Star's Puerto Rico business and also included documents related to Alaskan shipping. *See, generally*, Totem Ocean's Response to Plaintiffs' Motion to Compel Production of Documents; Exhibit 1 at ¶14. Thus, while Plaintiffs rightly point out that some documents were produced pursuant to subpoenas and that Defendants had an opportunity to object to the subpoenas' scope, review their documents and data, and provide responsive documents and data to the government, their assertion misses the point. Because the DOJ investigations concerned a broader range of issues than in this case and involved a large scale seizure of data, a significant portion of the documents produced pursuant to DOJ subpoenas is wholly irrelevant to the claims and defenses at issue here.

Additionally, irrespective of the scope of the DOJ investigations or Defendants' production of documents pursuant to subpoenas, it is not disputed that the DOJ obtained volumes of documents and data that are irrelevant not only to this lawsuit, but the DOJ's investigation as well. Those materials included documents subject to attorney-client privilege, outside communications with personal banking or financial advisors, and even Sea Star staff emails discussing personal communications with family and friends. *See* Exhibit 1 at ¶9. These materials are beyond the scope of Rule 26 and are not discoverable here.

## II. PLAINTIFFS HAVE NOT CITED A SINGLE CASE THAT SUPPORTS PRODUCTION OF IRRELEVANT DOCUMENTS JUST BECAUSE THEY WERE PREVIOUSLY SEIZED BY OR PRODUCED TO THE GOVERNMENT IN AN INVESTIGATION FAR BROADER THAN THE CASE AT HAND.

During the November 25, 2013, hearing, the Court questioned Plaintiffs' apparent assertion that a party could be required to produce all documents previously produced to the government during the course of a criminal investigation, without regard to the constraints of Rule 26. *See* Hr'g Tr. 124-25. The Court directed Plaintiffs to cite the case law in support of their assertion. *See id.* at 125. Plaintiffs have failed. Indeed, in every case cited by Plaintiffs that addresses discovery of documents previously produced to the government, the plaintiffs either requested production of documents from within the body of documents produced to the government that was narrowly defined to ensure production of relevant documents in the civil action or there was no evidence the request would result in substantial production of irrelevant or privileged material.

For instance, while the court in *In re NASDAQ Market-Makers Antitrust Litigation*, 929 F. Supp. 723, 724-25 (S.D.N.Y. 1996), granted the plaintiffs' motion to compel the production of certain documents previously produced to the DOJ, it did so only after evaluating whether plaintiffs' reasonably specific request actually sought relevant information. In other words, the

*NASDAQ* court did not compel production of all documents previously produced to the DOJ simply because those documents had been previously produced. *See id.* In fact, while later explaining its ruling that the DOJ-produced documents were not privileged under the Antitrust Civil Process Act, the court assured the defendants that the fact that the documents were "not privileged [was] not tantamount to mandating the disclosure of all [documents]; it merely permits their discovery *where they would be otherwise discoverable*." *Id.* at 726 (emphasis added). Thus, the court acknowledged that documents produced to the government during the course of an investigation are not inherently relevant or discoverable; the Federal Rules still apply.

*In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F. Supp. 2d 1335 (N.D. Ga. 2012) similarly contradicts Plaintiffs' position. *See* Pls.' Mot. to Compel 9 (citing *Delta/AirTran*, 846 F. Supp. 2d at 1365 (granting "Plaintiffs' request for all CID materials related to the first-bag fee investigation produced by Defendants to the DOJ, including correspondence, *subject to the Federal Rules of Civil Procedure*." (emphasis added))). The plaintiffs in *Delta/AirTran*, like the *NASDAQ* plaintiffs, also made narrowly-tailored requests for documents pertaining to specific issues and communications. *See* 846 F. Supp. 2d at 1360-65. The defendants were able to object to the requests, and the district court was then able to appropriately evaluate the scope of the requests. *See id.* at 1364-65. This uncontroversial procedure is exactly what is missing from this litigation. Plaintiffs cite this case in support of their contention that Defendants should summarily hand over every document in their possession. But even as the *Delta/AirTran* court granted plaintiffs' motion, it reminded the parties that "[d]isclosure of CID materials . . . has its limits[, and] their discovery [is] permissible

only where they would otherwise be discoverable under the Federal Rules of Civil Procedure." *Id.* at 1364.

Finally, Plaintiffs cite *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-MD-02420 YGR, 2013 WL 2237887 (N.D. Cal. May 21, 2013) and assert that the basis for producing all documents in this case "is far more compelling" than in that case. Pls.' Mot. to Compel 9-10. To the contrary, the basis for producing the documents in *Lithium Ion* was not only more compelling, it was completely different. The defendants in *Lithium Ion* objected to the class action plaintiffs' request for production of documents produced to the DOJ on the theory that it would be impossible to determine which subpoenaed documents were relevant to the alleged conspiracy; at the time of the request, there were over 70 pending complaints because the class action plaintiffs had yet to file an operative complaint. *Id.* at *1. The defendants did not identify any request that would have required the production of documents from the government investigation that were irrelevant to the case at hand. Their argument was that a final consolidated class action complaint might somehow narrow the scope of the allegations, and production of documents before then would be premature. *Id.* at *1-2. The court was not impressed with such speculation and rejected defendants' arguments in a single paragraph, stating "[w]ith more than 70 complaints on file, the court is not convinced that there are no pleadings from which to measure the relevance of the requested discovery." *Id.* at *2.

The problem with granting Plaintiffs' motion here is completely different. While the defendants in *Lithium Ion* complained there was no complaint from which to determine the scope of the alleged conspiracy, there is an operative complaint in this case, although plaintiffs have been ordered to file a new one less prolix than the original. The current complaint alleges only a conspiracy with respect to shipping between the continental United States and Puerto Rico. On

the other hand, the documents produced to the DOJ, even those that were first reviewed in response to subpoenas, contain documents and data that are clearly irrelevant to the allegations in this complaint. *See, generally*, Exhibit 1 at ¶¶7-14. In other words, Plaintiffs are seeking discovery of documents that are plainly not discoverable. The court's holding in *Lithium Ion* does nothing to bolster Plaintiffs' assertion. Again Plaintiffs have failed to cite a case permitting the blanket discovery they seek, and indeed, each case actually reinforces Defendants' position.

III. **THE SUGGESTION THAT DEFENDANTS AND COUNSEL WILL IGNORE THEIR OBLIGATION TO PROPERLY SEARCH AND PRODUCE DOCUMENTS IS UNCALLED FOR AND UNSUPPORTED.**

Finally, having otherwise failed to demonstrate any legal basis for compelling the production of irrelevant documents never properly requested under Rules 26 or 34, Plaintiffs plead with the Court to permit this plainly overbroad discovery based on an argument with no factual basis. Plaintiffs boldly assert that using the same search procedure and methodology used by every litigant in every complex document production case will "inevitably result in highly relevant materials and documents not being identified and produced." Pls.' Mot. to Compel 10 (emphasis supplied). They also complain that going to the trouble of allowing Defendants to exercise their right under the Federal Rules to search for relevant, non-privileged information will "waste additional time and expense," and "take a substantial amount of time." *Id.* Thus, for these reasons, Plaintiffs contend Defendants must produce confidential and proprietary documents related to Alaskan trade activities that are not even the subject of this lawsuit, privileged communications, and even staff email strings discussing personal information or outside communications.

But absent some showing of discovery abuse or misconduct—and there is no evidence of such on the part of the Defendants—this Court should not require Defendants to summarily hand

over every document and database in their possession. Indeed, in *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003), the Eleventh Circuit held that the district court abused its discretion in requiring the defendant to allow the plaintiff unlimited, direct access to its databases so that plaintiff could conduct a search for relevant documents. The district court had established no protocols for the search and failed to allow the defendant to object to the plaintiff's sweeping motion. *Id.* at 1316. While the parties agreed that the databases contained some relevant information, the defendant asserted its right to search the databases to exclude irrelevant, privileged, and confidential material. *Id.* The Eleventh Circuit concluded that without some "factual finding of some non-compliance with discovery rules" by the defendant, it was a clear abuse of discretion for the district court to grant the plaintiff such unfettered access. *Id.* at 1317. "Like the other discovery rules," the court stated, "Rule 34(a) allows the responding party to search his records to produce the required, relevant data. Rule 34(a) does not give the requesting party the right to conduct the actual search." *Id.*

To require Defendants to produce all documents produced to the DOJ without regard to relevance, based on an unfounded assertion that Defendants and their counsel will not fully and fairly comply with their obligations under the Federal Rules, is tantamount to granting Plaintiffs unfettered access pursuant to Rule 34(a) without any showing that Defendants have engaged in any misconduct or wrongdoing. There is absolutely no basis to believe that Defendants will not do what is required under the Federal Rules. And they should be permitted to exercise their right to conduct searches for relevant, non-privileged information in the first instance.

## CONCLUSION

Defendants do not contest that documents were produced to the DOJ pursuant to its investigation that are relevant to the issues in this lawsuit, and they intend to promptly and fully

13

comply with any reasonably tailored discovery request served on them by Plaintiffs. They ask no more than they not be required to produce volumes of documents that Plaintiffs know to be irrelevant or privileged. Plaintiffs know how to tailor a request to produce to seek documents relevant to an alleged Puerto Rican trade conspiracy and have now done so. Defendants will timely respond to the request to produce and will properly produce documents. Accordingly, and for the foregoing reasons, Sea Star and Saltchuk respectfully request this Court deny plaintiffs' motion to compel.

Dated: December 23, 2013

| TANNER BISHOP | GUNSTER YOAKELY & STEWART, P.A. |
|---|---|
| */s/ Michael G. Tanner* | */s/ William E. Adams, Jr.* |
| Michael G. Tanner | David M. Wells |
| Florida Bar No. 261300 | Florida Bar No. 0309291 |
| Gilbert Lee Feltel, Jr. | William E. Adams, Jr. |
| Florida Bar No. 993603 | Florida Bar No. 467080 |
| One Independent Drive, Suite 1700 | 225 Water Street, Suite 1750 |
| Jacksonville, FL 32202 | Jacksonville, Florida 32202-5185 |
| (904) 598-0034 | (904) 354-1980 |
| (904) 598-0395 (facsimile) | (904) 350-5953 fax |
| mtanner@tannerbishoplaw.com | dwells@gunster.com |
| gfeltel@tannerbishoplaw.com | badams@gunster.com |
| *Attorneys for Sea Star Line, LLC* | *Attorneys for Saltchuk Resources, Inc.* |

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 23, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Charles P. Pillans, III
Patrick P. Coll
Bedell, Dittmar, DeVault,
Pillans & Coxe, PA
The Bedell Bldg.
101 E Adams St.
Jacksonville, FL 32202
*Attorneys for Plaintiffs*

E. Lanny Russell
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, Florida 32202
*Attorney for Totem Ocean Trailer Express, Inc.*

David C. Eddy
Dennis J. Lynch
Travis C. Wheeler
Marguerite Willis
Nexsen Pruet, LLC
1230 Main Street, Suite 700
P.O. Drawer 2426
Columbia, SC 29202
*Attorneys for Plaintiffs*

Geddes D. Anderson, Jr.
Daniel Adam Stocker
J. Rice Ferrelle, Jr.
Murphy & Anderson, P.A.
1501 San Marco Blvd.
Jacksonville, FL 32207
*Attorneys for Leonard Shapiro*

  */s/ William E. Adams, Jr.*
  Attorney