## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ARROWPAC INCORPORATED, et al.,

       Plaintiffs,

v.

SEA STAR LINE, LLC, et al.,

       Defendants.

       Case No. 3:12-cv-1180-J-32JBT

## DEFENDANTS' UNOBJECTED TO MOTION TO
## SEAL AND SUPPORTING MEMORANDUM OF LAW

Pursuant to the Court's April 15, 2014 order (Doc. 158), Local Rule 1.09(a) and the Stipulated Protective Order (Doc. 136), defendants move for leave to file proposed Exhibits F.2, F.4 and F.6 to plaintiffs' memorandum in opposition to Totem's motion to dismiss (Doc. 155) under seal because these documents contain defendants' and non-parties' confidential, competitively sensitive, private, and proprietary financial information, which is not of public interest and should not be made publicly available.  In support of their motion, defendants say:

1.    The Court granted and entered the parties' Joint Stipulation and Order for the Production and Exchange of Confidential Information and Preservation of Privileged Information (the "Confidentiality Order;" Docs. 135 and 136).  The Confidentiality Order provides on its first page that "Disclosure and discovery activity in this action may involve production of trade secrets or

other confidential research, development, or commercial information, within the meaning of Rule 26(c), or other private or competitively sensitive information for which special protection from public disclosure … litigation would be warranted." (Doc. 136, page 1).  The Confidentiality Order defines "Confidential Information" as "All Disclosure or Discovery Material furnished by a Producing Party … which contain or are derived from trade secrets or other confidential research, development, or commercial information" (*Id.* at 2, emphasis added).   The Confidentiality Order further provides that "Parties may file documents under seal only upon motion and order entered under Local Rule 1.09 and 'no party shall file a document under seal without first having obtained an order granting leave to file under seal on a showing of particularized need.'"  (*Id.* at 14-15).

2.      Plaintiffs' memorandum in opposition to Totem's motion to dismiss the amended complaint (plaintiff's "Response;" Doc. 155) includes exhibits that defendants had designated as Confidential Information, subject to the protections of the Confidentiality Order.

3.      Plaintiffs moved to file those exhibits under seal (Doc. 156), taking no position on whether the documents were confidential.  The Court noted that defendants, rather than plaintiffs, had an interest in preserving the confidentiality of these documents, denied the motion without prejudice, and gave defendants an opportunity to move to seal the exhibits to plaintiffs' Response (Doc. 158).

4.      Defendants because of the "particularized need" established herein move to file three of those exhibits under seal:

a.     Leonard Shapiro Tax Return Excerpts (Exhibit F.2 to plaintiffs' Response);

b.     documents relating to Prudential Insurance Company's $50 million loan to Sea Star (Exhibit F.4 to plaintiffs' Response); and

c.     bills of lading containing Totem's customer pricing data (Exhibit F.6 to plaintiffs' Response).

5.     Defendants do not move to seal any of the other exhibits.

6.     Filing Exhibits F.4 and F.6 under seal is necessary to protect the rights of Totem and non-parties with no connection to this litigation, and will ensure commercial and sensitive financial information is not disclosed to Totem's competitors (and its other customers).   Redaction of this information cannot suffice, as hundreds of pages would need to be redacted to safeguard this information.   Additionally, filing Exhibit F.2 under seal is necessary to protect the rights of Leonard Shapiro as it will ensure that Mr. Shapiro's private sensitive financial information is protected.   The Confidentiality Order expressly protects this "confidential … commercial information" and "private or competitively sensitive information" with "special protection from public disclosure" (Doc. 136, page 1).

7.     Defendants relied upon that provision in producing this sensitive information to plaintiffs.   For these reasons, the confidential, sensitive information should remain confidential.

8.     Notably, no one outside this litigation has sought access to Exhibits

F.2, F.4 and F.6.  The subject matter of this action is old news, after the events giving rise to this action occurred years ago.  However, Exhibits F.4 and F.6 are relevant to Totem's and the non-parties' current commercial activities while Exhibit F.2 contains private sensitive financial information of Mr. Shapiro.

## MEMORANDUM OF LAW

Under Rule 26(c)(1)(g), a party may move, for good cause shown, for an order "requiring that a trade secret or other confidential research, development or commercial information not be revealed or revealed only in a specified way."  *See also, Chicago Tribune v. Bridgestone/Firestone*, 263 F.3d 1304, 1313 (11th Cir. 2001) (The prerequisite to entry of such an order is "a showing of 'good cause' made by the party seeking protection").

Good cause is required because "[t]he right of access to judicial records pursuant to the common law is well established." *Bovie Med. v. Livneh*, 2010 WL 4117635, at *2 (M.D. Fla. 2010).   This right, however, is not absolute and "may be overcome by a showing of good cause, which requires balancing the asserted right of access against the other party's interest in keeping the information confidential." *Romero v. Drummond Co.,* 480 F.3d 1234, 1246 (11th Cir.2007).  In balancing these interests, a court should consider:

> whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials of public concerns, and the

4

availability of a less onerous alternative to sealing the
documents.

*Id.*

Here, sealing the three exhibits would not impair court functions.  But as
discussed below, not sealing the three exhibits would harm legitimate privacy
interests and, as it pertains to Exhibits F.4 and F.6, allow for significant
competitive injury.  The information to be sealed does not concern public officials,
is not of any public concern and has marginal relevance to this action.  And as
discussed below, redaction is not a practical alternative.

Another relevant factor in ruling on a motion to seal is which party wishes
to file the confidential materials:

> As we noted in *United States v. Anderson*, 799 F.2d
> 1438 (11th Cir.1986), agreements to treat certain
> materials voluntarily produced during discovery as
> confidential facilitate the discovery process:
> "[l]itigants should not be discouraged from putting
> their discovery agreements in writing, and district
> judges should not be discouraged from facilitating
> voluntary discovery." 799 F.2d at 1441. **This is
> particularly the case where the party filing the
> presumptively confidential discovery material with
> the court is not the party claiming confidentiality,
> but that party's adversary, as is the case here.** As
> the District of Columbia Court of Appeals noted in
> *Mokhiber v. Davis*, 537 A.2d 1100 (D.C.App.1988),
> "[b]y submitting pleadings and motions to the court for
> decision, one enters the public arena of courtroom
> proceedings and exposes oneself ... to the risk ... of
> public scrutiny." 537 A.2d at 1111. The assumption is
> that one voluntarily foregoes confidentiality when one
> submits material for dispute resolution in a judicial
> forum. **There is no voluntariness, of course, where**

5

> one's adversary submits the presumptively confidential material.
>
> *Chicago Tribune v. Bridgestone/ Firestone,* 263 F.3d 1304, 1315 n.15 (11th Cir. 2001)(emphasis added).

Here, defendants did not voluntarily submit themselves to the public arena of courtroom proceedings—they are *defendants*.  And defendants did not voluntarily submit the confidential documents to the public arena—plaintiffs did.

Finally, "[p]rovided good cause is shown, parties may seal documents to protect interests of third parties."  *Marine Travelift v. Marine Lift*, 2014 WL 631669, at *3 (E.D. Wis. 2014).  As discussed below, the Court should protect the confidentiality interests of Prudential and Totem's customers.

Local Rule 1.09(a) provides, where filing under seal is not authorized by statute, rule or order, a party seeking to file under seal any document shall file a motion which includes:

> (i) an identification and description of each item proposed for sealing; (ii) the reason that filing each item is necessary; (iii) the reason that sealing each item is necessary; (iv) the reason that a means other than sealing is unavailable or unsatisfactory to preserve the interest advanced by the movant in support of the seal; (v) a statement of the proposed duration of the seal; and (vi) a memorandum of legal authority supporting the seal.

Exhibit F.4 to plaintiffs' Response is a Unanimous Consent to Action by Totem's Board of Directors, which approved a guaranty of Prudential's $50

million loan to Sea Star.[1]  Attached to the consent are copies of the loan agreement and Sea Star's affiliates' guarantees.

These 170 pages of documents detail many loan terms that the corporate defendants (and their affiliates) do not want to become public, including the following agreed to terms:  loan fees, interest rates, financial covenants, disclosure requirements, financial information in the guaranties under "Financial Tests" (working capital data, tangible net worth figures, financial ratios, earnings information, lists of material properties owned by Totem and its affiliates, and similar information for entities that are not defendants in this lawsuit (e.g. Matson Navigation Company and International Shipping Agency)).

This is the type of commercial *and* sensitive financial information that Rule 26(c)(1)(G) is intended to protect.  Allowing public disclosure of these loan documents (which would include disclosure to future lenders) would negatively impact the terms of future loans offered to the defendants.  These loan documents therefore should be filed under seal.[2]  *FDIC v. Tarkanian*, 2012 WL 1327856, at *1 (S.D. Cal. 2012) (sealing plaintiffs' loan applications and related loan closing statements and credit memoranda); *Sai v. H&R Block Enterprises*, 2009 WL 4928779, at *1 (D. Haw. 2009) (sealing meeting agenda containing financial

---

[1]  Although this particular document is from 1999, this loan in revised and expanded form continues to be in place today.

[2]  Florida state law provides that the books and records of a financial institution and the books and records pertaining to the deposit accounts and loans of depositors, borrowers, members and stockholders are confidential and cannot be disclosed except in certain enumerated circumstances, such as in response to a court order or a subpoena. § 655.059, Fla. Stat.  This law reflects the sensitivity of the loan documents.

information because "The Court finds that Defendant has a strong interest in keeping this proprietary and financial information confidential.").

Disclosure of these materials also harms Prudential because its competitors and other customers would learn Prudential's terms for a $50 million loan, thus placing Prudential at competitive disadvantage. *Marine Travelift v. Marine Lift*, 2014 WL 631669, at *3 (E.D. Wis. 2014) ("Provided good cause is shown, parties may seal documents to protect interests of third parties").

Exhibit F.6 to plaintiffs' Response is a composite of Bills of Lading for shipments Totem carried to or from Alaska that originated in or concluded in Florida (after being carried to or from Florida by trucking or railroad companies unaffiliated with Totem).  The Bills of Lading detail pricing and billing data (although some of the Bills of Lading are several years old, some are more current and one is dated October 4, 2013), container descriptions, and logistical controls and practices—and the type and amount of cargo carried for over 40 shippers and the shippers' personal contact information.

This exhibit should be sealed to protect the rights of these shippers. Disclosure would also prejudice Totem because Totem's competitors and other customers would become privy to Totem's pricing for these 40+ shippers for the types and amounts of goods shipped.  Plaintiffs admit in the Amended Complaint that the vast majority of cargo shipped on the Puerto Rican trade lane is shipped pursuant to confidential contracts rather than the publicly filed tariff rates.  The same is true for the Alaskan trade lanes and all Jones Act trade.   Totem's

competitors therefore do not know the rates Totem is charging its contract customers. Disclosure would put Totem at a competitive disadvantage. Redaction also is not an option with respect to these records because virtually the entire page of each Bill of Lading would need to be redacted.

This litigation involves the Puerto Rican trade lane. The Bills of Lading all relate to the Alaskan trade lane. Therefore, the prices Totem charged its customers, what and how much those customers shipped, and the identity of those customers is irrelevant. The only arguable relevance of the Bills of Lading is that a minor amount of Totem's business included goods from the Alaskan trade lane that were carried by truckers not affiliated with Totem to or from Florida. Totem disputes the Bills of Lading's relevance, but does not dispute the facts shown in the Bills of Lading.

Exhibit F.2 is a composite of redacted portions of Leonard Shapiro's 2002 and 2003 Federal tax returns (the "Tax Returns"). The tax returns should be filed under seal because they contain personal, private and confidential information of a sensitive nature. More specifically, the Tax Returns detail Mr. Shapiro's historical financial condition by, among other things, stating his annual income and, for that reason, it is not necessary for the public to have access to this information. Defendants seek to seal the Tax Returns because the information contained therein is personal, highly confidential, and financial in nature, and it has long been recognized that individuals have a right to confidentiality with regard to their personal financial information. *See U.S. v. Posner*, 594 F. Supp. 930, 935 (S.D.

Fla. 1984) (*citing Plante v. Gonzalez*, 575 F.2d 1119 (5th Cir. 1978)).  Sealing of the Tax Returns is the only means available to preserve Mr. Shapiro's right to confidentiality of this private sensitive financial information.  Redaction is not an option with respect to these records because plaintiffs are attempting to file the Tax Returns, not defendants, and further redaction would render the records meaningless.

Although the Tax Returns are not specifically required to be sealed in all instances by statute or rule, district courts within the Eleventh Circuit have routinely allowed such information to be filed under seal.[3]  In the case of *Ramada Worldwide Inc. v. AB Assocs. Midland Mgmt.*, 2007 WL 3284047 (M.D. Fla. Nov. 5, 2007), the defendant moved the Court for a protective order limiting public access to his approximately decade-old financial statement. *Id*.  The Court agreed and found in granting the motion that the defendant's financial statement should be filed with the Court under seal due to its sensitive nature.  *Id.*  In this case, the information found in the Tax Returns is of a similar nature of that found confidential in *Ramada*.

Defendants designated Exhibits F.2, F.4 and F.6 as confidential pursuant to the Confidentiality Order (Doc. 136).  Defendants relied on their right to move to

---

[3] *See e.g., New Hampshire Indem. Co. v. Reid*, 2007 WL 2972618 at *6 (M.D. Fla. July 27, 2006)(noting that the Court ordered tax returns and private financial records to be filed under seal); *Commodity Futures Trading Comm. v. Financial Risk Int'l, Inc.*, 2008 WL 5377984, at *14 (S.D. Fla. Oct. 1, 2008) (ordering documents discussing the defendants' financial condition to be filed and remain under seal until further order of the court).

file sensitive, confidential information under seal. Defendants' reliance is a consideration in determining whether the subject documents should be filed under seal. *Chicago Tribune v. Bridgestone/Firestone*, 263 F.3d 1304, 1315 n.15 (11th Cir. 2001) ("On remand, the district court should consider the fact that Firestone has exhibited behavior consistent with its claim of reliance in connection with the good cause balancing test.").

Defendants have been consistent with their claim that the subject documents are confidential. Defendants designated the documents as confidential and filed this motion.

For good cause, because the balancing of interest test has been met, and for the other reasons set forth above, Exhibits F.2, F.4 and F.6 to plaintiffs' Response should be filed under seal until this action is concluded.

## Local Rule 3.01(g) Certification

In compliance with Local Rule 3.01(g), defendants' counsel certifies they have conferred in good faith with plaintiffs' counsel concerning the foregoing motion, and that plaintiffs do not object to the relief requested herein. Plaintiffs do not concede that the documents defendants seek to file under seal merit any

confidential treatment and defendants agree that exhibits F.7-F.20 to plaintiffs'

Response no longer have confidential status under the Confidentiality Order (Doc.

136).

| | |
|---|---|
| TANNER BISHOP<br><br>By: /s/ Michael G. Tanner<br>      Michael G. Tanner<br><br>Michael G. Tanner<br>Florida Bar No. 261300<br>Gilbert L. Feltel, Jr.<br>Florida Bar No. 993603<br>One Independent Drive, Suite 1700<br>Jacksonville, FL 32202<br>(904) 446-2980/(904) 598-0395 Fax<br>mtanner@tannerbishoplaw.com<br>gfeltel@tannerbishoplaw.com<br><br>*Counsel for Defendant Sea Star Line, LLC* | GUNSTER, YOAKLEY & STEWART, P.A.<br><br>By: /s/ William E. Adams, Jr.<br>      William E. Adams, Jr.<br><br>David M. Wells<br>Florida Bar No. 0309291<br>William E. Adams, Jr.<br>Florida Bar No. 467080<br>225 Water Street, Suite 1750<br>Jacksonville, Florida 32202-5185<br>(904) 354-1980<br>(904) 350-5953 fax<br>badams@gunster.com<br>dwells@gunster.com<br><br>*Counsel for Defendant Saltchuk Resources, Inc.* |
| SULLIVAN & CROMWELL LLP<br><br>By: /s/ Steven L. Holley<br>      Steven L. Holley<br><br>125 Broad Street<br>New York, New York 10004<br>(212) 558-4737<br>HolleyS@sullcrom.com<br><br>*Counsel for Defendant Saltchuk Resources, Inc.* | SMITH HULSEY & BUSEY<br><br>By: /s/ Lanny Russell<br>      Lanny Russell<br><br>Florida Bar No. 0303097<br>225 Water Street, Suite 1800<br>Jacksonville, FL  32202<br>(904) 359-7798<br>lrussell@smithhulsey.com<br><br>*Attorneys for Defendant Totem Ocean Trailer Express, Inc.* |

MURPHY & ANDERSON, P.A.

By: /s/ *Geddes D. Anderson, Jr.*
    Geddes D. Anderson, Jr.

Florida Bar No. 138894
Daniel A. Stocker
Florida Bar No. 86821
1501 San Marco Blvd.
Jacksonville, FL 32207
(904) 598-9282
(904) 598-9283 (facsimile)
ganderson@murphyandersonlaw.com
dstocker@murphyandersonlaw.com

*Attorneys for Leonard Shapiro*

## **Certificate of Service**

I certify that on April 29, 2014, I electronically filed a copy of the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of the electronic filing to the counsel of record.


*/s/ Lanny Russell*
Attorney

868296.2