IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ARROWPAC INCORPORATED, et al.,

      Plaintiffs,

v.                                       Civil Action No. 3:12-cv-1180-J-32JBT

SEA STAR LINE, LLC, et al.,

      Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL
CORPORATE DEFENDANTS TO RESPOND TO PLAINTIFFS'
FIFTH SET OF INTERROGATORIES**

      Defendants Sea Star Line, LLC ("Sea Star"), Totem Ocean Trailer Express, Inc. ("Totem

Ocean"), and Saltchuk Resources, Inc. ("Saltchuk")(collectively "Defendants") file this response

to Plaintiffs' Motion to Compel Corporate Defendants to Respond to Plaintiffs' Fifth Set of

Interrogatories (the "Motion")(Dkt. No. 279), asking the Court to deny the Motion and state as

follows in support:

    **I.**    **Introduction.**

      After a failed motion to compel the documents obtained from Sea Star, Totem Ocean and

Saltchuk by the government through search warrant or subpoenas, Plaintiffs engaged Defendants

in months of negotiations to obtain all of the documents "seized by or produced to" the U.S.

government. In exchange for Defendants' agreement, Plaintiffs agreed to withdraw their requests

for production concerning liability issues and to forgo further document discovery into the areas

covered by the withdrawn requests.  Defendants complied with the parties' Stipulation

Regarding the Scope of Discovery (the "Stipulation")[1], producing over 669,000 documents obtained by the government. Plaintiffs do not allege that Defendants have failed to comply with the Stipulation, yet they apparently seek to unwind the Stipulation to obtain documents they agreed to forego.

The single interrogatory in Plaintiffs' Fifth Set of Interrogatories[2] asks Defendants to provide additional details regarding their counsels' negotiations with the DOJ over the scope of the subpoenas served in 2008. The Stipulation renders the issue irrelevant. Plaintiffs received the documents provided to the DOJ; the discussions and agreements between Defendants' counsel and the DOJ do not relate to the claims or defenses of any party, nor can they lead to the discovery of admissible evidence due to the Stipulation's limitations. The Motion asserts no basis to set aside the parties' agreement, nor is there any. Plaintiffs received the benefit of their agreement and should be held to its terms.

While the Motion accuses Defendants of discovery gamesmanship, Defendants repeatedly told Plaintiffs of the negotiations with the DOJ. The basic fact is revealed in the e-mail first transmitting the subpoenas, in filings in this action and in the parties' agreement. Plaintiffs cannot credibly claim that they were unfairly surprised nor can they ignore the facts underlying their heavily negotiated bargain. Plaintiffs' Motion should be denied.

## II.     Factual Background.

Plaintiffs asserted at the outset of this litigation that Defendants should immediately produce all documents obtained by the DOJ during their criminal investigation, which included documents relating to Puerto Rican cabotage as well as voluminous documents relating to

---

[1] A copy of the Stipulation, as amended, is attached as Exhibit 1. The Sea Star search warrant and the grand jury subpoenas to Sea Star, Totem Ocean and Saltchuk (collectively, the "Subpoenas") are attached to Exhibit 1.
[2] Sea Star's, Totem Ocean's and Saltchuk's objections and answer to Plaintiffs' Fifth Set of Interrogatories are attached as Exhibits 43, 44, and 45, respectively.

Alaskan cabotage (the "DOJ Materials").  Plaintiffs made this argument numerous times, focusing on the previous collection of the documents and the supposed absence of burden in producing them "off the shelf."[3]  Defendants resisted, explaining that the DOJ's broad inquiry included documents relating to the Alaska trade and, at least with regard to Sea Star, the seizure encompassed large volumes of irrelevant documents.

At the hearing on Defendants' motion to dismiss, Plaintiffs again argued that the DOJ Materials should be produced immediately.  Defendants pointed to the absence of any request for production and the significant volumes of irrelevant documents in the DOJ Materials.  After hearing from both parties, the Court directed Plaintiffs to file a motion to compel.

On December 9, 2013, Plaintiffs filed their motion to compel production of all documents "given to or taken by the U.S. Department of Justice" during its criminal investigation.[4]  In response, Sea Star and Saltchuk argued that plaintiffs' sweeping demand was inconsistent with Fed. R. Civ. P. 34 and ignored the inclusion of irrelevant confidential and personal documents within the DOJ Materials; Totem Ocean's response focused on the inclusion of documents

---

[3] In the parties' initial Case Management Report, plaintiffs proposed that Rule 26 disclosures be served by February 1, 2013, and should "include all documents and data produced to or seized by the Department of Justice or FBI." Case Management Report (Dkt. No. 61) at 7, attached as Exhibit 2.  Plaintiffs argued that if the Court determined to defer discovery until after ruling on Defendants' then-pending motions to dismiss, "the parties nevertheless shall produce all documents and data produced to or seized by the Department of Justice or the FBI by February 1, 2013…" and Plaintiffs repeated this request in the context of discussing their planned requests for production. *Id.* at 9, 12.  Similarly, at the parties' appearance at the Initial Pretrial Conference in this matter, counsel for the Arrowpac plaintiffs urged the production of the DOJ Materials without delay:

> MR. EDDY:  Well, one thing we would urge, even pending the briefing on disqualification, is that defendants produce what they already have on CDs sitting in boxes.
> And that is the materials that were **produced to the Department of Justice** – or **seized by the Department of Justice**, which they have not produced to anyone in almost five years.
> And there's no reason that should not move forward now.

Transcript of Hearing of January 11, 2013, at 38:17-25, attached as Exhibit 3.

[4] Plaintiffs' Motion to Compel Production of Documents by Defendants and Memorandum in Support Thereof at 1 (Dkt. No. 120).

relating to the Alaska trade.[5]   Saltchuk and Sea Star's response attached the declaration of Sheri

Karnopp, a former paralegal at Garvey Schubert Barer, counsel to Saltchuk, Totem Ocean and

Sea Star in the DOJ investigation.   Ms. Karnopp stated that "[b]y agreement between the DOJ

and Saltchuk's counsel, the scope of the subpoena was reduced.   Saltchuk produced e-mails from

selected employees regarding Saltchuk's business (including e-mails relating to TOTE's business

in the Alaska trade) and Saltchuk's financial records, including its tax filings."[6]   Judge Toomey

denied Plaintiffs' motion to compel, determining "Defendants should not be required to produce

irrelevant documents regardless of any lack of burden to them."[7]

In the interim, Plaintiffs served their First Request for Production of Documents to All

Defendants (the "First Requests"), covering numerous topics in the search warrant and the

subpoenas, and demanded all documents "produced to or taken by any U.S. governmental

entity…relating to the conspiracy at issue in this action…."[8]   Defendants objected to this request,

but Sea Star began its production of the materials seized by or produced to the DOJ on January

31, 2014, in advance of the parties' mediation.

Almost immediately following the service of defendants' response to the First Request,

the parties began to discuss Totem Ocean's and Saltchuk's DOJ Materials, including Plaintiffs'

desire to obtain documents concerning the Alaska trade.   On January 24, 2014, counsel for

Plaintiffs proposed the production of "only documents evincing communications/

---

[5] Defendants Sea Star Line, LLC and Saltchuk Resources, Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Production of Documents (Dkt. No. 123); Totem Ocean's Response to Plaintiffs' Motion to Compel Production of Documents and Incorporated Memorandum of Law (Dkt. No. 125).
[6] Karnopp Declaration, attached to Defendants Sea Star Line, LLC and Saltchuk Resources, Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Production of Documents (Dkt. No. 123), at 3, attached hereto as Exhibit 4.
[7] Order of January 31, 2014, at 5 (Dkt. No. 142).
[8] Plaintiffs' First Request for Production of Documents to All Defendants at Request 12 (emphasis added), attached as Exhibit 5.

correspondence/meetings with Horizon and/or agreements with Horizon" in the Alaska trade.[9]  A week later, the parties also discussed how discovery in the case could be narrowed if Saltchuk and Totem Ocean produced all of their DOJ Materials.[10]  Plaintiffs responded on February 4, 2014, proposing to eliminate a significant number of their pending requests in exchange for the "non-privileged DOJ documents (that is – the documents seized by or produced to the U.S. government regarding this conspiracy)...."[11]  Plaintiffs asked for the subpoenas served on Defendants by the DOJ, which Defendants supplied on February 10, advising that "[t]he search warrant obviously resulted in seizures of records, but the subpoenas were the subject of ordinary negotiation with DOJ."[12]

On February 24, 2014, Defendants sent Plaintiffs the first draft of the stipulation.[13]  The draft followed Plaintiffs' proposal as reflected in the February 4 letter, with Defendants agreeing to produce documents "produced to the United States Department of Justice in response to the grand jury subpoenas dated April 17, 2008, as modified by agreement between Saltchuk, Totem Ocean and the United States Department of Justice," and addressing the withdrawal of certain requests and the limitations of the applicable date range for an additional group of requests.

Plaintiffs sent a revised draft on March 3, 2014.[14]  Plaintiffs made several changes, including adding a provision which would allow them to seek additional productions if "the productions pursuant to this Stipulation are incomplete."  Defendants returned another draft on March 7, adopting Plaintiffs' proposed "seized by or produced to" language but changing the

---

[9] See E-mail from Travis Wheeler to Bill Adams of January 24, 2014, attached as Exhibit 6.
[10] See E-mail from Bill Adams to Travis Wheeler of January 31, 2014, attached as Exhibit 7.
[11] See Letter from Travis Wheeler to Bill Adams of February 4, 2014, attached as Exhibit 8.
[12] See E-mail from Bill Adams to Travis Wheeler of February 10, 2014 (emphasis added), attached as Exhibit 9. Defendants produced an additional subpoena to SSL on March 14, 2014, but by that point, the documents produced pursuant to that subpoena had already been provided to Plaintiffs. See E-mail from Bill Adams to Travis Wheeler of March 14, 2014, attached as Exhibit 10.
[13] See E-mail from Bill Adams to Travis Wheeler of February 24, 2014, attached as Exhibit 11. Exhibit 10 also contained a copy of the e-mail forwarding the subpoenas, which advised Plaintiffs of the negotiations with the DOJ.
[14] See E-mail from Travis Wheeler to Bill Adams of March 3, 2014, attached as Exhibit 12

"incomplete" term to define it by reference to the documents taken by or given to the government to limit the production to what was "on the shelf."[15]

A revised draft from Plaintiffs followed on March 16[16]. Plaintiffs inserted a clause preserving their right to claim that the production to the government was "incomplete." This new provision gutted the concept of an "off the shelf" production by opening the door to litigation, years after the seizure and productions, of issues never raised by the DOJ, eliminating any benefit to the proposed stipulation. Accordingly, Defendants determined that the proposal was not viable and advised Plaintiffs of that position on March 28.[17]

Plaintiffs soon revived the discussion. The parties spoke on April 1 and Plaintiffs agreed to revise their draft in light of Defendants' concerns and forwarded a new version on April 4.[18] The April 4 draft modified Plaintiffs' position concerning the withdrawn requests and production of the DOJ Materials, but continued to suggest language that left doubt as to the scope of their right to challenge the scope of the DOJ Materials.[19] With mediation and the document production deadline approaching and given the uncertain state of the proposed stipulation, the parties briefly turned to more practical questions. Leading into the mediation, the parties discussed the upcoming document production deadline. On April 6, Plaintiffs proposed an

---

[15] E-mail from Bill Adams to Travis Wheeler of March 7, 2014, attached as Exhibit 13. Also of note is the change of parties to the draft agreement. While originally contemplated for all defendants, plaintiffs' counsel changed this position to include only SRI and Totem Ocean. *See* E-mail from David Eddy to Jonathan Huth of March 7, 2014, attached as Exhibit 14. Defendants' draft captured this revised position, which would change several times prior to execution.

[16] *See* E-mail from Travis Wheeler to Bill Adams of March 16, 2014, attached as Exhibit 15. A redlined version of plaintiff's revisions was provided by separate e-mail on March 17, 2014.

[17] *See* Letter from William E. Adams, Jr. to Travis Wheeler of March 28, 2014, attached as Exhibit 16. While Defendants moved away from the proposed agreement, Defendants advised of their intention to use search terms on the DOJ Materials to identify Puerto Rico-related documents and to produce responsive documents from the resulting population. *See id.*

[18] *See* E-mail from Travis Wheeler to Bill Adams of April 4, 2014, attached as Exhibit 17.

[19] *See* Exhibit 17 at paragraphs 2 and 7.

extension of "30-45 days,"[20] and, while at mediation, the parties agreed to "extend the document

due date…pending resolution of the stip issue."[21]

Following mediation, the parties again turned to the stipulation.  Defendants provided a

series of questions regarding the April 4 draft and the parties' counsel spoke on April 10 to

address them.  The parties discussed paragraph 7 of the April 4 draft, which led to the following

exchange in a confirmatory e-mail:

> **Q9 – What is intended by the "no prejudice" clause in paragraph 7?**  We
> discussed my concern that the language, as written, makes the agreement illusory
> since it would seem to depend on plaintiffs' view of whether the Government
> Documents are "complete," leaving open room for disputes down the road.  You
> explained that your concern here was not with a failure to produce everything
> produced to the DOJ or the decisions made by defendants' prior counsel in
> selecting the documents for review, but instead that there could be an group of
> documents somewhere, currently unknown to exist by any of us, that were
> concealed from the prior efforts and not considered in connection with the
> productions subject to the subpoenas.  The example you provided was a
> hypothetical set of documents that had been hidden away in Mr. Shapiro's garage
> and are unknown to anyone.
> *Yes—we want to leave the door open if, for example, a subpoena response to the*
> *Government was incomplete.  In addition, we want to reserve the right to follow-*
> *up as to specific documents that are referred to in the documents but not part of*
> *the production.*[22]

Plaintiffs explained that the additional language did not seek to guard against differences

between the Subpoenas and the scope of the DOJ Materials, but instead, to protect against the

possibility of unknown documents previously concealed from Defendants and their counsel.

---

[20] *See* E-mail from Travis Wheeler to Bill Adams of April 6, 2014, attached as Exhibit 18.

[21] *See* E-mail from Travis Wheeler to Bill Adams of April 8, 2014, attached as Exhibit 19.  Plaintiffs eventually
receded from this position as the discussions of the stipulation got down to the final details and the document
production deadline drew closer.  *See* Letter from Travis Wheeler to Bill Adams of May 1, 2014 at 1, attached as
Exhibit 20; E-mail and prior string from David Eddy to Bill Adams, Michael Tanner and Charles Pillans of May 7,
2014, attached as Exhibit 21.

[22] E-mail from Travis Wheeler to Bill Adams of April 11, 2014, attached as Exhibit 22.  The bolded text was
contained in the Defendants' list of questions; the regular text was contained in a confirmatory e-mail from Bill
Adams to Travis Wheeler on April 11, while the italicized text was Mr. Wheeler's response approximately 17
minutes later.

Defendants provided a significantly revised draft to Plaintiffs on April 25, 2014[23].  The April 25 draft modified the "no prejudice" clause based on the parties' April 10 conversations on this point:

> **8. No prejudice.**  Should additional documents be discovered that would otherwise constitute Government Documents but which were not considered by Saltchuk, Totem Ocean, Sea Star or their counsel for production in response to the Subpoenas due to their unauthorized concealment from Saltchuk, Totem Ocean, Sea Star or their counsel (the "Concealed Documents"), such Concealed Documents shall not be subject to the terms of this Stipulation.  By way of example only, if a cache of documents were discovered to have been hidden at an individual's home, unknown to Saltchuk, Totem Ocean, Sea Star or their counsel and were not considered in connection with the production of documents in response to the Subpoenas, this stipulation would not apply to those documents.

Plaintiffs provided another revision on May 1, which added defendant Shapiro and a number of additional conditions to the terms controlling the productions pursuant to the requests that would not be withdrawn.[24]  As to the "no prejudice" language, Plaintiffs reverted to a provision allowing relief if the production was "incomplete or otherwise not in compliance with this stipulation."[25]  Defendants immediately re-raised their concerns with the provision and pointed back to the parties' prior discussions.[26]  Plaintiffs' counsel advised that they intended "to be sure that our understanding of two underlying material assumptions is correct, namely: (1) [Totem Ocean] and Saltchuk will give us everything the Government took or received and in the same format; and (2) [Totem Ocean] and Saltchuk produced to the Government everything that was called for by the subpoenas."[27]

Having advised Plaintiffs numerous times that the productions resulting from the Saltchuk and Totem Ocean subpoenas were negotiated with the DOJ and that the DOJ Materials

---

[23] *See* E-mail from Bill Adams to Travis Wheeler of April 25, 2014, attached as Exhibit 23.
[24] *See* E-mail from Travis Wheeler to Bill Adams of May 1, 2014, attached as Exhibit 24.  Exhibit 20 was attached to this e-mail, but is omitted for convenience, as is a non-redlined version of Plaintiffs' revisions.
[25] *See id.* at paragraph 10.
[26] *See* E-mail from Bill Adams to Travis Wheeler of May 2, 2014, attached as Exhibit 25
[27] E-mail from Travis Wheeler to Bill Adams of May 4, 2014, attached as Exhibit 26.

would not include "everything" responsive to the subpoenas, Defendants rejected this proposal and its underlying assumption. On May 9, 2014, with the document production deadline looming, the parties' counsel spoke and reached agreement. The agreement ultimately hinged on the concept of what was produced – Defendants would produce everything actually received by the DOJ and, if they did not, Plaintiffs could seek relief.

The resulting exchange of proposed language resolved the issue. Plaintiffs first suggested the following:

> **No prejudice.** Should Plaintiffs deem the Defendants' production of Government Documents to be incomplete, deficient, or otherwise not in compliance with this stipulation, plaintiffs reserve the right to seek any relief or remedy available to them under law or equity.... Should additional documents be discovered by Defendants that would otherwise constitute Government Documents but which were not considered by Defendants for production in response to the underlying government subpoena due to their concealment from Defendants or their counsel, Defendants shall notify counsel for the Plaintiffs in writing via electronic mail within 24 hours of learning of their existence, their qualification as Government Documents and their prior non-production.[28]

Concerned with the continuing lack of clarity in the phrase "incomplete, deficient or otherwise not in compliance," Defendants countered:

> Should Defendants fail to produce any Government Documents, plaintiffs reserve the right to seek any remedy available under law or equity, including but are not limited to moving the Court for reinstatement of the Withdrawn Requests, with the date of the Withdrawn Request relating back to their initial date of service, and for reasonable award of attorney's fees and costs incurred as a result of having to seek relief or remedy.... Should additional documents be discovered by Defendants that would otherwise constitute Government Documents but which were not considered by Defendants for production in response to the underlying government subpoena due to their concealment from Defendants or their counsel, Defendants shall notify counsel for the Plaintiffs in writing via electronic mail within 24 hours of learning of their existence, their qualification as Government Documents and their prior non-production.[29]

---

[28] E-mail from Travis Wheeler to Bill Adams of May 9, 2014, attached as Exhibit 27.
[29] E-mail from Bill Adams to Travis Wheeler of May 9, 2014, attached as Exhibit 28.

Plaintiffs accepted this language and the parties agreed in principle to the Stipulation.[30]

Defendants followed plaintiffs' acceptance with a proposed final draft.[31]

On Monday May 12, Plaintiffs returned a revised draft.[32]  Shapiro would now be excluded from the stipulation and several of the various proposed search terms would be expanded.[33]  The parties engaged in numerous exchanges, but plaintiffs, Sea Star, Totem Ocean and Saltchuk executed the Stipulation later that day.  Notably, the Subpoenas themselves, along with the e-mail transmitting them which advised of the negotiation of the subpoenas with DOJ, would be attached to the Stipulation as Exhibit A.[34]

As executed by the parties, the Stipulation called on Defendants to produce all non-privileged documents "seized by or produced to" the government.[35]  On "receipt of all the [documents] produced per paragraph 1 above," Plaintiffs would withdraw 31 requests for production, primarily dealing with liability issues falling within the scope of the Subpoenas.[36]  Importantly, following the production of the documents, Defendants' production obligation relative to the withdrawn requests would be fulfilled in full.[37]  In the event of a failure to produce any of the "seized by/produced to" documents, Defendants would be precluded from using them in this matter.[38]  Concerning the "no prejudice" clause, the parties ultimately agreed to the following:

---

[30] *See* E-mail from Travis Wheeler to Bill Adams of May 9, 2014, attached as Exhibit 29.

[31] *See* E-mail from Bill Adams to Travis Wheeler of May 9, 2014, attached as Exhibit 30.

[32] *See* E-mail from Travis Wheeler to Bill Adams of May 12, 2014, attached as Exhibit 31.

[33] The change in Plaintiffs' position was accompanied by a demand that Shapiro immediately reach agreement to produce documents responsive to Plaintiffs' request for production.  Plaintiffs initially took the position that Shapiro's sudden exclusion from the stipulation meant that the agreed-upon extension to the document production deadline would not apply to him.  *See* E-mail from Bill Adams to Travis Wheeler of May 12, 2014, attached as Exhibit 32; E-mail from Bill Adams to David Eddy of May 12, 2014, attached as Exhibit 33.

[34] *See* E-mail from Bill Adams to Travis Wheeler of May 12, 2014, attached as Exhibit 34.

[35] Exhibit 1 at 2.

[36] *Id.*

[37] *Id.* at 3.

[38] *Id.* at 3.

Should Defendants fail to produce, in whole or in part, the Government Documents [i.e. the documents "seized by or produced to the Department of Justice or other governmental entity"] in compliance with this Stipulation, plaintiffs reserve the right to seek any remedy available under law or equity.... Should additional documents be discovered by Defendants that would otherwise constitute Government Documents but which were not considered by Defendants for production in response to the underlying government subpoena due to their concealment from Defendants or their counsel, Defendants shall notify counsel for the Plaintiffs in writing via electronic mail within 24 hours of learning of their existence, their qualification as Government Documents and their prior non-production. If the documents are within the possession and control of Defendant(s), Defendants will produce the documents to Plaintiffs within ten (10) business days of having noticed Plaintiffs' counsel of their existence. If the documents are not in the possession or control of Defendant(s), Defendants shall cooperate with Plaintiffs in good faith regarding any subpoena to be issued for and the production of such additional documents.[39]

Thus after months of negotiation and numerous drafts of the Stipulation, Plaintiffs accepted the originally requested "off the shelf" production with no right to step into the shoes of the DOJ and relitigate the production. Defendants fully complied with the Stipulation and Plaintiffs received 669,639 documents produced to or seized by the Government, including approximately 108,774 Alaska documents that they otherwise would not have. Defendants collected and produced an additional 60,475 documents in response to the remaining requests. Yet, through the Motion, Plaintiffs now want to void the Stipulation and subject Defendants to additional, unwarranted discovery.

III.   **Argument and Authorities**.

Attorney-managed discovery is certainly broad, but not limitless. Fed. R. Civ. P. 26 provides, in pertinent part, that:

[p]arties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense**...For good cause, the court may order discovery of any matter relevant to **the subject matter involved in the action**.[40]

---

[39] *Id.* at 15-6.
[40] Emphasis added.

11

In drafting this amendment, the Federal Rules Advisory Committee intended to signal "to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings...."[41] It is not enough that a fact or document might lead a party to admissible evidence alone; the fact or document must be relevant to the litigation as framed in the complaint and answers in the first instance for a party to obtain it without judicial intervention.  While parties may want discovery that goes beyond their pleadings, "...the mere fact that a [party] entertains a 'broad theory of the case' does not justify more expansive discovery, unless the discovery is relevant to the [party's] actual claims or defenses, or the [party] makes a showing of good cause."[42]  The proponent of discovery and a related motion to compel bears the burden to show that the discovery sought is relevant to the issues of the case.[43]

### a.  The scope of production pursuant to the DOJ subpoenas is not relevant to the claims and defenses in this case.[44]

Stated plainly, the scope of the arrangements reached with the DOJ concerning the productions to be made by Sea Star, Totem Ocean and Saltchuk do not relate to the claims or defenses at issue in this case.  Plaintiffs' interrogatory asks Defendants to describe changes to the scope of the Subpoenas reached in negotiation with the DOJ, to identify the participants and dates of those discussions and to identify any writings memorializing those discussions.[45]  The limitations placed on the Subpoenas by the parties in a separate action do not relate to any element of the claim asserted in the Amended Complaint, nor do they pertain in any way to any

---

[41] Fed. R. Civ. P. 26 advisory committee's note (2000).

[42] *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1193 (10th Cir. 2009).

[43] *See Hancock Bank v. Hill Street, L.L.C.*, 2013 WL 6815055 (M.D. Fla. Dec. 24, 2013)

[44] The Motion spends three full pages arguing against Defendants' privilege objection, though the parties' discussions have focused on the relevance of Plaintiffs' inquiry. Plaintiffs' interrogatory is written broadly enough to encompass not only the discussions with DOJ, but also internal discussions and documentation regarding those talks. The Motion does not address these obviously privileged communications, so neither does this Response. To the extent that the Court reads the Motion to encompass internal privileged discussions, Defendants request the opportunity to file a brief supplemental response.

[45] *See* Motion at 8.

defense asserted in this action.  Plaintiffs' interrogatory is discovery about discovery in another case, not discovery about the issues in dispute here.

Further, the Stipulation precludes any further document discovery on this point.  In exchange for the entirety of the documents seized by or produced to the government, Plaintiffs withdrew a host of requests and agreed not to seek any further productions "relating to the categories of items covered by the Withdrawn Requests."[46]  The liability requests withdrawn by the Stipulation covered the topics addressed in the Subpoenas.[47]  Plaintiffs exchanged their right to obtain production of documents that may have been responsive to the Subpoenas, but which were not produced, for the ability to obtain the immediate production of the entirety of the DOJ Materials.

Defendants performed their obligations under the Stipulation, foreclosing additional document discovery.  Plaintiffs executed the Stipulation knowing that the scope of the Subpoenas had been negotiated with the DOJ.  At no time during the months of discussion did Plaintiffs ask about the terms of the negotiations with the DOJ or what the DOJ had agreed to accept as a full production.  Plaintiffs obtained the written correspondence with the DOJ pursuant to the Stipulation, but now want discovery of the various discussions and agreements concerning the Subpoenas.  Not only is this information irrelevant to the matters at issue, but it is information that leads nowhere.  Defendants produced everything given to the government and Plaintiffs agreed to accept those documents and unconditionally restrict their right of further document discovery on 31 topics.  Accordingly, Plaintiffs are not entitled to obtain documents that might be responsive to the Subpoenas, but which were not produced to the DOJ, making the

---

[46] Exhibit 1 at 3.

[47] The withdrawn requests are so broad that they encompass the separate requests of the grand jury subpoenas.  By way of example only, Plaintiffs' Request No. 2, which seeks documents relating to Horizon, Crowley or Trailer Bridge, includes matters sought by requests no. 10, 12, 13, 15, 16, and 21-28 in the subpoenas to Sea Star, Totem Ocean and Saltchuk.  *Cf.* Exhibit 5 *with* Exhibit 1.

information requested by Plaintiffs' interrogatory unlikely to lead to the discovery of any admissible evidence.

### b. Since evidence of non-prosecution is not admissible, the requested discovery cannot lead to admissible evidence.

Plaintiffs assert that the details of the negotiations of the Subpoenas are relevant to "Saltchuk's and Totem's assertions that their non-indictment means they were not involved in the admitted Puerto Rican cabotage antitrust conspiracy."[48]   Evidence of non-prosecution of alleged criminal conduct is not admissible in a subsequent civil action, as Plaintiffs have recognized.[49]   Plaintiffs' counsel's response to an inquiry from the Court at the hearing on Totem Ocean's motion to dismiss explains the logic of this issue well:

> THE COURT:  I'm sure I'm asking you probably an unfair question.  And you can just answer it in any way you want to.  But if it's so clear that Totem was involved in this conspiracy, why, apparently, has the Department of Justice been uninterested in it?
> MR. EDDY:  They were interested in Totem, Your Honor.  They served a grand jury subpoena on them.  They served a grand jury subpoena on Saltchuk.
> I can't tell you why prosecutors do what they do.  Sometimes they take on tough cases and take them to trial.  Other times, you know, I scratch my head and go, Why didn't you go after them?
> I think there's abundant evidence to go after Mr. Shapiro.  He was represented by counsel.  And, you know, the government was looking at Mark Tabbutt and Saltchuk, as well.
> The government chose to do what it did.  I – that's all I can say.[50]

Stated differently,

> There is no doubt that the mention of "[n]o arrest" by Stevens's attorney was improper, for evidence of non-arrest, like evidence of nonprosecution or acquittal of a crime, is generally inadmissible in a civil trial concerning the same incident. This rule is primarily based on the fact that criminal and civil trials require different burdens of proof for proving guilt and liability, respectively.  A decision

---

[48] Motion at 1.  Saltchuk has not made such an assertion; Totem Ocean's mention of the issue came in the context of a motion to dismiss testing the plausibility of Plaintiffs' claim that an Alaska shipping company participated in a conspiracy concerning Puerto Rican cabotage.

[49] *See* Motion to Compel Defendant Leonard Shapiro to Produce Unredacted Correspondence to the DOJ at 2, n.1 (Dkt. No. 244); *Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 147 (3d Cir. 2002); *FIGA v. R.V.M.P. Corp.*, 874 F.2d 1528, 1531 (11th Cir. 1989); *Cross v. Potter*, 2010 WL 5314151 at *6 (N.D. N.Y. 2010).

[50] Transcript of Hearing of September 22, 2013 at 47, attached as Exhibit 35.

not to arrest, therefore, may be based on law enforcement authorities' belief that they would be unable to prove to a jury beyond a reasonable doubt that the defendant committed the suspected crime, which does not necessarily indicate that a plaintiff cannot prove the same by a preponderance of the evidence in a civil trial.  Furthermore, the decision not to arrest may take into account many factors irrelevant to a civil suit, such as the allocation of law enforcement resources and other considerations of prosecutorial discretion.  *See id.* Because the probative value of evidence of non-arrest is very limited, courts exclude it in order to avoid the danger of the jury in a civil trial exaggerating its worth.[51]

As the Motion explains, discovery into the terms of the agreements between DOJ and Defendants relating to the Subpoenas could only relate, if at all, to an inquiry into the facts available to DOJ when making its prosecutorial decisions, but this decision-making process and its results are simply not admissible evidence.  The information sought by Plaintiffs' interrogatory is not relevant on its own, nor is it likely to lead to the discovery of admissible evidence.

### c.   There is no game of "gotcha" when the facts are openly disclosed.

Plaintiffs' Motion indelicately suggests that Defendants tricked Plaintiffs into accepting the Stipulation and giving up their right to discovery of various topics since:

> …during the document discovery phase of this case, Plaintiffs agreed (after reviewing the subpoenas) to accept Defendants' production of documents in response to the subpoenas as fulfilling some of Defendants' basic discovery obligations in this matter.  Defendants' recent disclosures that they withheld documents, however, raise significant concerns over what relevant evidence the Defendants did not produce to the DOJ – and therefore did not produce to Plaintiffs in this case.[52]

Plaintiffs' Motion implies that they learned of this issue after the execution of the Stipulation,[53] but the documentary record establishes that Defendants advised Plaintiffs of this fact much, much earlier.

---

[51] *Johnson*, 283 F.3d at 147 (internal citations omitted).
[52] Motion at 3.
[53] Plaintiffs' Motion points to "admissions" by Totem Ocean and Saltchuk on September 12, 2014 and July 15, 2014, respectively, that there may well be documents responsive to the Subpoenas that were not produced to the DOJ.  Motion at 4-7.

Saltchuk disclosed the fact of its negotiations with DOJ in response to Plaintiffs' December 9, 2013 Motion to Compel, when it filed Sherri Karnopp's declaration which directly advised that "[b]y agreement between the DOJ and Saltchuk's counsel, the scope of the subpoena was reduced.  Saltchuk produced e-mails from selected employees regarding Saltchuk's business (including e-mails relating to [Totem Ocean]'s business in the Alaska trade) and Saltchuk's financial records, including its tax filings."[54]  Defendants again warned Plaintiffs of the limitations to the scope of the Subpoena productions on February 10, 2014 in connection with the parties' earliest discussions of the Stipulation, telling Plaintiffs that "the subpoenas were **the subject of ordinary negotiation with DOJ**."[55]  The February 24, 2014 draft of the Stipulation – the very first one – called on Defendants to provide the documents "produced to the United States Department of Justice in response to the grand jury subpoenas dated April 17, 2008, **as modified by agreement between Saltchuk, Totem Ocean and the United States Department of Justice**."[56]  The parties heavily negotiated the issue and the parties attached the e-mail transmitting the Subpoenas and advising that the scope of the response had been negotiated to the Stipulation.[57]  Plaintiffs cannot credibly assert that Defendants concealed their negotiations with DOJ.

Further, the parties negotiated extensively over the question of how Plaintiffs might avoid the Stipulation.  Defendants protested the notion of the "incompleteness" of the DOJ Materials to avoid later complaints that the DOJ Materials did not completely respond to the Subpoenas, which would be difficult to address since Defendants would have to recreate discussions between their various lawyers and the prosecutors, years after the fact of those conversations.  The parties

---

[54] Exhibit 4 at 3.
[55] Exhibit 9 (emphasis added)
[56] Exhibit 11 at paragraph 1(emphasis added).
[57] Exhibit 1 at Exhibit A.

ultimately agreed to language that protected Plaintiffs against the possibility that a rogue

individual concealed documents from Defendants or their counsel, but recognized the reality that

Defendants did not produce all responsive documents.  Paragraph 4 of the Stipulation directly

addresses the issue:

> **Production of Other Responsive Documents.**  Should the Defendants desire to
> use documents responsive to one or more of the Withdrawn Requests that are not
> Government Documents, the Producing Entities shall produce all such documents
> responsive to that Withdrawn Request in accordance with the Federal Rules of
> Civil Procedure and by any deadline for production of documents set by the Court
> or by agreement of the parties.[58]

While Plaintiffs invoke the "sword/shield" doctrine, these protective provisions point out the

error of this argument.[59]  If Defendants want to use documents not included in the DOJ Materials

but which are responsive to the requests Plaintiffs withdrew – such as any documents not

produced to the DOJ – Defendants agreed to produce them.

It is difficult to understand how a party, repeatedly advised of the existence of a

negotiated outcome – and, in the case of Saltchuk, provided with the details of that outcome –

could claim to be the victim of "gotcha" tactics in connection with the negotiation of an

agreement that spanned several months.  Plaintiffs wanted to obtain the DOJ Materials, willingly

negotiated to trade the ability to obtain other documents in exchange for the DOJ Materials and

did so after being told that the DOJ Materials did not reach the limits of the Subpoenas.

Plaintiffs never sought to learn about the substantive contours of the DOJ Materials until they

---

[58] Exhibit 1 at 3.

[59] None of the cases cited in support of Plaintiffs' argument on this point are on point here.  *Greater New Orleans Fair Housing Ctr. v. Ditta*, 2013 WL 5797728 (E.D. La. 2013), addressed plaintiffs' efforts not to disclose secret recordings and surveillance videos prior to the defendant's deposition, *Kearney Partners Fund, LLC v. U.S.*, 946 F. Supp.2d 1302 (M.D. Fla. 2013), involved the IRS' refusal to provide its contentions explaining the denial of penalty relief in a tax dispute, and *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 2013 WL 5743647 (D. Nev. 2013), concerned plaintiffs' refusal to provide psychological information concerning the subject of a police shooting while advancing a civil rights and negligence claims premised on the police department's failure to properly handle the victim's mental illness.  None of these cases involve a circumstance where a party was advised of a fact, negotiated a compromise in light of the fact, requested and received protections against the adverse outcomes from that fact, and then later claimed to be prejudiced.

received them, but now that they have those documents, they claim that they are the victims of sneaky tactics that result in lopsided discovery.

### d.  Plaintiffs' Fifth Interrogatory exceeds the limits of permissible discovery.

Fed. R. Civ. P. 33(a)(1) provides that "...a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." The test for determining whether a "discrete subpart" should be counted as a separate interrogatory for purposes of Rule 33's numerical limit is straight-forward: the court should "look at the way lawyers draft interrogatories and see if their typical approaches threaten the purpose of the rule by putting together in a single question distinct areas of inquiry that should be kept separate."[60]  Where a subpart is "separate and distinct" from the main interrogatory, it should be counted against the limit.[61]  When an interrogatory seeks information about an event and requests the identification of documents relating to that event, it should be treated as two separate interrogatories.[62]

As to Defendants, Plaintiffs nominally served 25 interrogatories on Sea Star and 19 on each of Totem Ocean and Saltchuk across five sets of interrogatories.[63]  Of these, interrogatories 5-17 in Plaintiffs' Second Set of Interrogatories, interrogatories 1-6 of Plaintiffs' Third Set of Interrogatories, and interrogatory 1 of Plaintiffs' Fifth Set of Interrogatories call for the identification of documents relating to the topic of inquiry.[64]  Accordingly, each of these

---

[60] *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D. D.C. 2005).
[61] *Kline v. Berry*, 287 F.R.D. 75, 79 (D.D.C. 2012); *Ritchie Risk—Linked Strategies Trading (Ireland), Ltd. v. Coventry First, LLC*, 273 F.R.D. 367 (S.D. N.Y. 2010).
[62] *Smith v. Café Asia*, 256 F.R.D. 247, 254 (D. D.C. 2009).
[63] Plaintiffs' First Set of Interrogatories to All Defendants, attached as Exhibit 36; Plaintiffs' Second Set of Interrogatories to All Defendants, attached as Exhibit 37; Plaintiffs' Third Set of Interrogatories to Defendant Sea Star Line, LLC, attached as Exhibit 38; Plaintiffs' Fourth Set of Interrogatories to Defendant Sea Star Line, LLC and Saltchuk Resources, Inc., attached as Exhibit 39.
[64] *See* Exhibits 37, 38, and 39.

interrogatories should be counted at least twice, resulting in a more accurate count of 46

interrogatories on SSL and 34 on Totem Ocean and Saltchuk.[65]

Interrogatories 5-8 of Plaintiffs' Second Interrogatories amplify this problem further. As

to each of Mark Tabbutt, Leonard Shapiro, Robert Magee and Tim Engle, Plaintiffs asked

Defendants to:

> [i]dentify each and every meeting, phone call, email or other communication
> between January 1999 through December 2008 between [Messrs. Tabbutt,
> Shapiro, Magee or Engle] and an officer, employee, consultant or agent of
> Horizon Lines, Inc. (or its predecessors [e.g., CSX Lines], subsidiaries and
> affiliates), Crowley Liner Services, Inc., Crowley Maritime Corporation, Trailer
> Bridge, Inc. or Navieras de Puerto Rico (NPR) [including Tom Holt] and all
> documents relating to same.[66]

These interrogatories do not have a common singular point of inquiry, but instead ask for the

listing of meetings between these four gentlemen and numerous distinct third parties over a nine-

year span. Following Saltchuk's objection, Plaintiffs identified 26 specific individuals from

Horizon, Crowley and Trailer Bridge to be the subject of their inquiry.[67]   Accordingly, for these

four interrogatories alone, plaintiffs asked Saltchuk to provide information along 104 separate

and distinct lines of inquiry.

While Defendants have accommodated Plaintiffs' discovery practices to date, Plaintiffs

cannot continue to ignore the limitations imposed by Rule 33. Defendants identified the

documents responsive to Plaintiffs' interrogatory, but they should not be compelled to respond to

the other aspect of the inquiry. Plaintiffs have simply gone too far.

Plaintiffs do not address Defendants' numerosity objection directly – implicitly admitting

the impropriety of their discovery – but instead assert that where a party objects to an

interrogatory, but then answers "subject to" those objections, the objections are waived and the

---

[65] *See Smith*, 256 F.R.D. at 254.
[66] Exhibit 37 at 6-7.
[67] *See* E-mail from Travis Wheeler to Bill Adams dated September 11, 2014, attached as Exhibit 40.

party should be compelled to answer the discovery in full.[68]   The cases cited all relate to the practice of asserting boilerplate objections without explanation in response to written discovery; it is well established in this district that such objections are improper, regardless of whether an answer is provided[69]. Waiver does not result where a party appropriately objects to written discovery and then answers the remainder[70]. Further, in light of Plaintiffs' universal observance of the same practice, they should not be heard to complain here, especially in light of the recent extensive briefing and related expense undertaken regarding their resistance to Defendants' discovery.

## IV.   Conclusion.

The Motion represents an unwarranted effort to avoid the Stipulation, well after Plaintiffs received the documents they sought, but could not otherwise obtain.  That Plaintiffs may now regret entering the Stipulation is no reason to set it aside, nor does the fact that Plaintiffs failed to timely ask about the details of Defendants' negotiations with the DOJ justify an after-the-fact effort to obtain that information.  Having freely entered the Stipulation after being advised of the negotiations and compromised their ability to conduct further discovery, the information sought by Plaintiffs' Fifth Set of Interrogatories is irrelevant and Defendants respectfully request that the Court enter an order denying the Motion and granting Defendants such other and further relief to which they may be justly entitled.

---

[68] Motion at 10 n. 5.
[69] Middle District Discovery (2001) at IV.A.3.  Plaintiffs' Motion states that the documents referenced in Defendants' interrogatory answers do not evidence any negotiations with the DOJ regarding the Subpoenas. (Dkt. No. 279 at page 9).  This is not correct, as shown by Exhibits 41 and 42, which are examples of referenced email communications demonstrating such negotiations.
[70] *Id.*

Dated this 27th day of October, 2014.

Respectfully submitted,

| TANNER BISHOP | GUNSTER, YOAKLEY & STEWART, P.A. |
|---|---|
| By: /s/ Michael G. Tanner<br>Michael G. Tanner<br><br>Michael G. Tanner<br>Florida Bar No. 261300<br>Gilbert L. Feltel, Jr.<br>Florida Bar No. 993603<br>One Independent Drive, Suite 1700<br>Jacksonville, FL 32202<br>(904) 446-2980/(904) 598-0395 Fax<br>mtanner@tannerbishoplaw.com<br>gfeltel@tannerbishoplaw.com<br><br>*Counsel for Defendant Sea Star Line, LLC* | By: /s/ David M. Wells<br>David M. Wells<br><br>David M. Wells<br>Florida Bar No. 309291<br>225 Water Street, Suite 1750<br>Jacksonville, Florida 32202-5185<br>(866) 915-7185<br>dwells@gunster.com<br><br>*Counsel for Defendant Saltchuk Resources, Inc.* |
| SULLIVAN & CROMWELL LLP | SMITH HULSEY & BUSEY |
| By: /s/ Steven L. Holley<br>Steven L. Holley<br><br>125 Broad Street<br>New York, New York 10004<br>(212) 558-4737<br>HolleyS@sullcrom.com<br><br>*Counsel for Defendant Saltchuk Resources, Inc.* | By: /s/ E. Lanny Russell<br>E. Lanny Russell<br><br>Florida Bar No. 0303097<br>225 Water Street, Suite 1800<br>Jacksonville, FL 32202<br>(904) 359-7798<br>lrussell@smithhulsey.com<br><br>*Counsel for Defendant Totem Ocean Trailer Express, Inc.* |

## CERTIFICATE OF SERVICE

I certify that on this 27th day of October, 2014, I electronically filed a copy of the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of the electronic filing to:  Charles P. Pillans, III, and Patrick P. Coll, **Bedell, Dittmar, DeVault, Pillans & Coxe, PA**, The Bedell Bldg., 101 E Adams St., Jacksonville, FL 32202; and David C. Eddy, Dennis J. Lynch, Travis C. Wheeler, **Nexsen Pruet, LLC**, 1230 Main Street, Suite 700, P.O. Drawer 2426, Columbia, SC 29202.

*/s/ David M. Wells*
Attorney